RAQUEL MATOS MOLERO, demandante y recurrente, *v.* ROCHE PRODUCTS, INC., demandada y recurrida.

*Número:* RE-91-656 *Resuelto:* 14 de enero de 1993

*Efraín Maceira Ortiz*, abogado de la recurrente; *Luis F. Antonetti* y *José M. Lorié Velasco*, de *Goldman, Antonetti, Ferraiuoli & Axtmayer*, abogados de la recurrida.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

El 31 de octubre de 1991, el Tribunal Superior, Sala de Arecibo, dictó sentencia parcial que desestimó por prescripción la reclamación incoada por la demandante recurrente, Raquel Matos Molero, contra su patrono, Roche Products, Inc. (Roche), presentada al amparo de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146–151. El foro de instancia determinó que la formulación y tramitación de un cargo por discrimen por razón de sexo al amparo del Título VII de la Ley Federal de Derechos Civiles de 1964 (42 U.S.C. sec. 2000e *et seq.)* —Título VII— ante la Comisión de Igualdad de Oportunidades en el Empleo (*Equal Employment Opportunity Commission* (E.E.O.C.)), no suspende el término prescriptivo de un (1) año para presentar una acción judicial en el foro local al amparo de la Ley Núm. 100, *supra.* Examinemos a continuación los hechos que dieron lugar a la presente controversia.

I

*Los hechos*

La demandante Matos Molero fue reclutada por la demandada Roche en 1977. Ocupó la misma plaza de "supervisora de cuentas" hasta octubre de 1986, fecha en que alegadamente fue transferida a una plaza de menor jerarquía por razón de su sexo.

El 2 de febrero de 1987, Matos Molero presentó un cargo por discrimen por razón de sexo ante la E.E.O.C. Dicho cargo fue notificado a Roche y remitido a la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos de Puerto Rico (en adelante Unidad Antidiscrimen), donde se le asignó un número y se abrió un expediente. Entre la E.E.O.C. y la Unidad Antidiscrimen existía, y to-

davía existe, un acuerdo denominado *Worksharing Agreement*, mediante el cual ambas agencias, en reconocimiento de su jurisdicción y metas en común, diseñaron un procedimiento para minimizar la duplicidad de esfuerzos en el procesamiento de cargos por discrimen.

Luego que el cargo fue diferido a la Unidad Antidiscrimen, ésta renunció al procesamiento del mismo. En otras palabras, renunció a su jurisdicción y el 25 de febrero de 1987 lo refirió, de vuelta, a la E.E.O.C. para los trámites de rigor al amparo de las leyes federales.

El 14 de junio de 1989 la E.E.O.C., a solicitud de Matos Molero, expidió una autorización para instar demanda (*right to sue letter*). Esta autorización es un requisito previo para poder llevar una acción judicial basada en el Título VII. El 13 de septiembre de 1989, Matos Molero instó una demanda al amparo de la Ley Núm. 100, *supra*, en el Tribunal Superior, Sala de Arecibo.

Luego de múltiples trámites procesales y de una vista, Roche se reiteró en su solicitud de desestimación de la demanda por haber prescrito la causa de acción fundada en la Ley Núm. 100, *supra*. Alegó Roche que había transcurrido más de un (1) año desde la presentación de la querella ante la Unidad Antidiscrimen y la presentación de la demanda. El 31 de octubre de 1991 el tribunal de instancia dictó sentencia mediante la cual concedió lo solicitado.

Inconforme, Matos Molero presentó recurso de revisión planteando la comisión del error siguiente:

A. Erró el Honorable Tribunal al determinar que la tramitación del cargo de discrimen por razón de sexo ante la Equal Employment Opportunity Commission (E.E.O.C.) —el cual fue notificado al patrono y referido a la Unidad Anti Discrimen, la cual le asignó número y luego defirió [sic] el mismo a la E.E.O.C. —, no tuvo el efecto de dejar en suspenso el término prescriptivo a la luz del acuerdo de reciprocidad y de jurisdicción primaria y exclusiva de la Unidad Anti Discrimen del Departamento del Trabajo y Recursos Humanos por razón del "Worksharing Agreement" con respecto a toda querella de discrimen por razón

de sexo que se presente por una querellante del Estado Libre Asociado contra un querellado cuyas operaciones se encuentran en el Estado Libre Asociado.[1] (Énfasis suprimido.)

## II

*Discrimen por razón de sexo; remedios estatales y federales*

 Bajo el estado de derecho vigente, una persona que alega que su patrono ha incurrido en actos discriminatorios en su contra por razón de sexo, puede recurrir a un remedio estatal o a uno federal. En Puerto Rico, la Ley Núm. 100, *supra*, prohíbe específicamente el discrimen por razón de sexo, mientras que a nivel federal, esta materia está reglamentada en el Título VII. El Art. 4 de la Ley Núm. 100, *supra*, 29 L.P.R.A. sec. 149, establece que las reclamaciones civiles podrán tramitarse por vía judicial mediante una acción ordinaria o mediante el procedimiento especial de querella de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, sobre reclamaciones laborales.[2] El empleado también tiene la opción de presentar una querella administrativa ante el Departamento del Trabajo y Recursos Humanos (en adelante Departamento del Trabajo). 29 L.P.R.A. sec. 150. Para llevar una acción judicial sobre discrimen por razón de sexo ante el foro local, no es requisito agotar el remedio administrativo.[3] *Cf. Ibáñez v. Molinos de P.R., Inc.*, 114 D.P.R. 42 (1983). Se puede acudir directamente al tribunal dentro del término prescriptivo de un (1) año desde el momento del alegado acto discriminatorio. *Srio. del Trabajo v.*

---

[1] Por no ser necesario debido a la conclusión a que llegamos, no discutiremos el segundo error planteado.

[2] 32 L.P.R.A. secs. 3118–3132.

[3] El 14 de marzo de 1988 se aprobó el Reglamento Núm. 3591 del Departamento del Trabajo y Recursos Humanos para administrar la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146–151. Allí se establece el procedimiento de una querella que ante el Departamento del Trabajo puede llevar un empleado que alega discrimen.

*F.H. Co., Inc.*, 116 D.P.R. 823 (1986); *Olmo v. Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740 (1981).

■ Por otro lado, y contrario a nuestra legislación, el Título VII federal requiere el trámite administrativo previo a la presentación de una acción judicial. Una persona que reclama una violación al Título VII no puede instar una acción judicial hasta tanto haya tratado de agotar ciertas avenidas de remedios administrativos potenciales. *Love v. Pullman Co.*, 30 L.Ed.2d 679 (1972). Sin embargo, no es necesario que la persona espere a que culminen los trámites administrativos ante la E.E.O.C. La ley permite solicitar una autorización para instar una demanda (*right to sue letter*) a los ciento ochenta (180) días de haber presentado el cargo ante la agencia. 42 U.S.C. sec. 2000e-5(f)(1); 29 C.F.R. sec. 1601.28 (1990). Veamos, en síntesis, cuáles son los procedimientos ante la E.E.O.C. relevantes a la solución del caso de autos.

Como regla general, un querellante debe presentar un cargo por discrimen ante la E.E.O.C. dentro de los ciento ochenta (180) días de la ocurrencia del alegado acto discriminatorio. Si la persona inicialmente instituye procedimientos ante una agencia estatal o local que tenga autoridad para ofrecerle un remedio, el término para presentar el cargo se extiende a trescientos (300) días. 42 U.S.C. sec. 2000e-5(e). El cargo debe ser notificado al querellado para que entonces se proceda a una investigación encaminada a determinar si existe causa razonable para creer que lo alegado en el cargo realmente sucedió. Si la E.E.O.C. no encuentra causa para proceder con el cargo, debe desestimarlo y notificar al querellante, el cual entonces tiene noventa (90) días para presentar una acción judicial. De otra parte, si la E.E.O.C. determina que existe causa para proceder, primeramente tratará de conciliar a las partes. Si no tiene éxito en eliminar la alegada práctica discriminatoria, la E.E.O.C. puede instar una acción judicial, pero

si no lo hace dentro del término de ciento ochenta (180) días de haberse radicado el cargo, el querellante puede solicitar una autorización para instar una demanda (*right to sue letter*). Luego de obtener dicha autorización, el querellante tiene noventa (90) días desde que la recibe para instar la acción judicial.[4] 42 U.S.C. secs. 2000e-5(b) y (f)(1).

■ Ahora bien, parte de la política pública de la legislación federal es darle a las agencias estatales la primera oportunidad de considerar las querellas por discrimen. *Love v. Pullman Co.*, supra, pág. 684. La ley federal propicia que los estados tengan una oportunidad de combatir el discrimen libres de una intervención federal prematura.[5] A estos efectos dispone que ningún cargo puede ser presentado ante la E.E.O.C. hasta que hayan transcurrido sesenta (60) días de la presentación inicial del cargo ante una agencia estatal autorizada, a menos que los procedimientos ante la agencia estatal hayan terminado con anterioridad. 42 U.S.C. sec. 2000e-5(c); *EEOC v. Commercial Office Products Co.*, 100 L.Ed.2d 96 (1988). Es por esto que cuando se presenta un cargo ante la E.E.O.C., ésta lo refiere a la agencia estatal para que se procese a base de la ley estatal. Por sesenta (60) días la agencia estatal tiene jurisdicción exclusiva para tramitar el cargo. Durante este tiempo el cargo está en "animación suspendida" en la E.E.O.C., quedando automáticamente radicado en la E.E.O.C. una vez terminan los procedimientos estatales. *Love v. Pullman Co.*, supra, pág. 684.

■ Dentro de este período de diferimiento de sesenta

---

[4] 1 *Sullivan, Zimmer and Richards, Employment Discrimination* Sec. 11.1, págs. 424–425 (2da ed. 1988).

[5] El Tribunal Supremo federal, citando a *Oscar Mayer & Co. v. Evans*, 60 L.Ed.2d 609 (1979), expresó:

"This Court, too, has recognized that Congress envisioned federal intervention when 'States decline, for whatever reason, to take advantage of [their] opportunities' to settle grievances in 'a voluntary and localized manner'." *EEOC v. Commercial Office Products Co.*, 100 L.Ed.2d 96, 108 (1988).

(60) días, el querellante debe presentar el cargo ante la agencia estatal. De otra parte, si la E.E.O.C. lo recibe originalmente, ésta deberá referirlo a la agencia estatal dentro de doscientos cuarenta (240) días del alegado acto discriminatorio; de esta manera se asegura que pueda quedar radicado de forma eficaz en la E.E.O.C. dentro del límite de trescientos (300) días que le impone la ley.[6] En otras palabras, el radicar el cargo ante la E.E.O.C. no es estrictamente determinante para efectos de los límites prescriptivos hasta que el término de diferimiento estatal haya expirado. *Mohasco Corp. v. Silver*, 65 L.Ed.2d 532 (1980).

■ Los reglamentos de la E.E.O.C. proveen que ésta referirá el cargo a la agencia estatal correspondiente, conocida como *Section 706 agency*. 29 C.F.R. sec. 1601.13(a) y (b) (1990). Los estados que tienen leyes que prohíben el discrimen se conocen como "estados de aplazamiento" (*deferral states*). Puerto Rico es un estado de aplazamiento para los efectos del Título VII, y el Departamento del Trabajo es considerado como una agencia de *fair employment practice* o *F.E.P. Agency*. 29 C.F.R. sec. 1601.74 (1990). Una vez diferido el cargo, la E.E.O.C. podrá comenzar a procesarlo a los sesenta (60) días del diferimiento, cuando terminen los procedimientos ante la agencia estatal o si la agencia estatal renuncia a su derecho exclusivo de procesar el cargo, cualesquiera de estas cosas que ocurra primero. 29 C.F.R. sec. 1601.13(a)(4)(ii) (1990).

El efecto de esto es que toda querella presentada ante la E.E.O.C. será referida a la Unidad Antidiscrimen. Esto no quiere decir, sin embargo, que la querella sea necesariamente procesada por dicha Unidad.

---

[6] Si el querellante no radica ante la E.E.O.C. dentro de los doscientos cuarenta (240) días, el cargo podría estar todavía en tiempo de ser considerado como radicado en la E.E.O.C. si la agencia estatal o local termina sus procedimientos antes de trescientos (300) días del alegado acto discriminatorio. *EEOC v. Commercial Office Products Co.*, supra.

■ La E.E.O.C. tiene facultad para entrar en acuerdos con las agencias estatales para establecer procedimientos de resolución efectivos e integrados. 42 U.S.C. sec. 2000e-4(g)(1); 29 C.F.R. sec. 1601.13(c) (1990). Estos se conocen como *Worksharing Agreements* y típicamente proveen para la división de responsabilidades por cargos entre la E.E.O.C. y la agencia estatal. En el caso de Puerto Rico, el Departamento del Trabajo y la E.E.O.C.(⁷) tienen un *Worksharing Agreement*, el cual dispone sobre las responsabilidades de cada agencia y los procedimientos a seguir para procesar eficazmente y sin dilación los cargos por discrimen. Es como consecuencia de este *Worksharing Agreement* que surge la controversia en el caso de autos. La recurrente alega que la tramitación del cargo ante la E.E.O.C., luego de diferido a la Unidad Antidiscrimen, la cual a su vez lo refirió de vuelta a la E.E.O.C., tuvo el efecto de dejar en suspenso el término prescriptivo para demandar al amparo de la Ley Núm. 100, *supra*. En otras palabras, que mientras se tramitaba el cargo en la E.E.O.C., quedaba suspendido el término para reclamar en el foro judicial al amparo de la Ley Núm. 100, *supra*.

Examinemos la parte pertinente del *Worksharing Agreement* suscrito en 1986 y vigente al momento de ocurrir los hechos:

3. EEOC by this agreement designates and establishes the Unit [la Unidad Antidiscrimen] as an agent of EEOC for the purposes of receiving charges on behalf of EEOC and the Unit which meet its jurisdictional requirements and those of Title VII, as amended, will be forwarded to EEOC within 48 hours. Charges which do not meet the Unit's jurisdictional requirements, but may meet those of Title VII, as amended, will be received as well and forwarded to EEOC within 48 hours. Charges filed with the Unit and forwarded for filing with EEOC will

(⁷) La oficina de distrito de la E.E.O.C. que corresponde a Puerto Rico está en Nueva York.

be referred to as dual filings.

　5. The Unit waives its exclusive processing rights granted to it under Sections 706(c) and 706(d) of Title VII in order to facilitate the EEOC to initially process the following categories of charges:

　h. All charges alleging employment discrimination covered by Puerto Rico Law 100, as amended, and federal law, Title VII of the Civil Rights Act of 1964, as amended, and which charges are *received first by the agency (Puerto Rico)* 241 to 300 days after the alleged date of discrimination.

　6. In order to avoid delay as to *all charges other than those enumerated in paragraph 4,* the Unit hereby waives its exclusive right to process those charges for 60 days, as provided in Section 706(c) of Title VII in the Civil Rights Act of 1964, as amended, so that EEOC can take immediate action on such charges and effectively implement the Worksharing Agreement. (Énfasis suplido.)

　El párrafo cuarto (4to) lee:

　4. The Unit will take primary responsibility for processing all charges originally received by the Unit, except as otherwise provided in paragraph 5 and in addition will process the following charges:
　a. *All charges received by EEOC from Charging Parties in the jurisdiction.*
　b. All charges received by EEOC against certain Respondents as agreed to in writing by the parties to this agreement.
　c. All charges alleging two or more bases, at least one of which EEOC has no jurisdiction to process under Title VII, except as provided in subsection 5(e). (Énfasis suplido.)

　　Como podrá observarse, ambas agencias acordaron que la Unidad Antidiscrimen tendría la responsabilidad primaria de procesar los cargos recibidos por la E.E.O.C. si los querellantes se encontraban en la jurisdicción de Puerto Rico. Esta es la situación en el caso de autos; la querellante se encontraba trabajando en Puerto Rico cuando se querelló directamente a la E.E.O.C. Su caso no caía bajo los párrafos cinco (5) o seis (6) en que la Unidad

Antidiscrimen expresamente renuncia anticipadamente a su jurisdicción exclusiva de sesenta (60) días y sobre los cuales mantiene jurisdicción y no actúa hasta tanto la E.E.O.C. resuelva el cargo.(8)

En el caso de autos, la recurrente presentó un cargo ante la E.E.O.C. que cae bajo las circunstancias del acápite 4(a) del *Worksharing Agreement*, que no envuelve renuncia anticipada. La E.E.O.C., a su vez, lo refirió a la Unidad Antidiscrimen. En el *Charge Transmittal Form* que envió le solicitó a la agencia local su renuncia a la tramitación del cargo. La Unidad Antidiscrimen acogió dicha solicitud e inmediatamente lo refirió de vuelta a la E.E.O.C., renunciando así al período de procesamiento exclusivo de sesenta (60) días.(9) De los documentos en autos no surge lenguaje alguno que indique el interés de la Unidad Antidiscrimen en retener la jurisdiscción sobre el cargo. A diferencia de los cargos que conllevan una renuncia anticipada, sobre los cuales la Unidad Antidiscrimen retiene jurisdicción, la situación del caso de autos tuvo como consecuencia que ésta renunciara a su jurisdicción.

Con relación a demandar luego de recibir una autorización para demandar de la E.E.O.C. (*right to sue letter*), en *Yellow Freight System v. Donnelly*, 108 L.Ed.2d 834 (1990), una empleada, dentro del límite de noventa (90) días, acudió al tribunal estatal con una acción al amparo de las leyes estatales. Dicha acción fue desestimada por ella no haber agotado los remedios administrativos estatales. Posterior a los noventa (90) días de haber recibido la autoriza-

---

(8) La cláusula pertinente lee así:

"8. ... *All charges on which advance agreement has been reached pursuant to paragraph 5 will not be acted upon by the Unit until EEOC has resolved the charge.* The Unit will review EEOC's resolution, in accordance with the Unit's Statute or Ordinance, rules and regulations. If the Unit decides it cannot act on a charge included in paragraph 4, it shall notify EEOC within 10 days on a form mutually agreed to by EEOC and the Unit." (Énfasis suplido.)

(9) La E.E.O.C. equivocadamente indicó en el *Charge Transmittal Form* que de acuerdo con el *Worksharing Agreement*, el cargo sería procesado por la E.E.O.C. El caso de autos claramente le correspondía procesarlo al Departamento del Trabajo. Cabe señalar que tampoco se radicó una querella separada ante la Unidad Antidiscrimen.

ción para demandar, enmendó su acción para incluir una reclamación al amparo del Título VII. Luego de trasladarse el caso al tribunal federal, éste determinó que el hecho de haber presentado la acción en el tribunal estatal, al amparo de las leyes estatales, tuvo el efecto de interrumpir el término de noventa (90) días, ya que ambos tribunales tenían jurisdicción concurrente y la enmienda se retrotrajo al momento de la presentación de la demanda original. Véanse: *Smith, Craver and Clark, Employment Discrimination Law*, Cap. 6, pág. 80, Sup. 1990; 3 *Sullivan, Zimmer and Richards, Employment Discrimination* Sec. 30.9.2, pág. 192 (1988).

 Cabe señalar, además, que el que una persona reclame sus derechos al amparo de la Ley Núm. 100, *supra*, o del Título VII no precluye el que pueda reclamar al amparo de cualquier otra ley.

Sobre este particular, en *Johnson v. Railway Express Agency*, 44 L.Ed.2d 295 (1975), el Tribunal Supremo federal determinó que el recurrir al remedio provisto bajo el Título VII no afectaba los reclamos de violación de derechos civiles al amparo de 42 U.S.C. sec. 1981. El Tribunal resolvió que el presentar un cargo ante la E.E.O.C. no tenía el efecto de interrumpir el término prescriptivo para presentar una acción en los tribunales, basada en los mismos hechos, al amparo de 42 U.S.C. sec. 1981, ya que ambos remedios, aunque relacionados se consideran separados, distintos e independientes.[10] Al respecto, el Tribunal expresó:

---

[10] A igual conclusión llegó el Tribunal de Apelaciones del Noveno Circuito en *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198 (9no Cir. 1988). Éste desestimó las causas de acción estatales por estar prescritas, ya que no se trajeron dentro del término de un (1) año que establecía la ley para ese tipo de acción. Véase, también, *Green v. Los Angeles Cty. Superintendent of Sch.*, 883 F.2d 1472 (9no Cir. 1989).

Petitioner freely concedes that he could have filed his § 1981 action at any time after his cause of action accrued; in fact, we understand him to claim an unfettered right so to do. Thus, in a very real sense, petitioner has slept on his § 1981 rights. The fact that his slumber may have been induced by faith in the adequacy of his Title VII remedy is of little relevance inasmuch as the two remedies are truly independent. *Johnson v. Railway Express Agency*, supra, pág. 305.

Inclusive, dicho tribunal ha expresado que todas las causas de acción basadas en leyes federales de derechos civiles[11] existen independientes de cualquier otro remedio legal o administrativo que pueda estar disponible al amparo de leyes federales o estatales. *Burnett v. Grattan*, 82 L.Ed.2d 36 (1984). El *ratio decidendi* de estos casos es la separabilidad e independencia de los remedios que tiene una persona agraviada.

## III

*La acción administrativa ante la E.E.O.C. y la interrupción extrajudicial de la prescripción*

Ahora bien, veamos si al amparo de las normas de derecho que imperan en nuestra jurisdicción se puede considerar la notificación a un patrono de la querella presentada ante la E.E.O.C. como una reclamación extrajudicial,

---

En apoyo a esta posición, varios comentaristas coinciden en que como en el tribunal federal se puede unir una causa de acción estatal a la causa de acción federal, a base de la doctrina de *pendent jurisdiction*, es conveniente acudir al tribunal con ambas causas de acción cuando transcurra el período de ciento ochenta (180) días ante la E.E.O.C. que requiere la ley. A. Catania, *State Employment Discrimination Remedies and Pendent Jurisdiction Under Title VII: Access to Federal Courts*, 32 Am. U. L. Rev. 777 (1983); S.L. Willborn, *Employment Discrimination Laws in Nebraska: A Procedural Labyrinth*, 62 Neb. L. Rev. 708 (1983).

[11] 42 U.S.C. secs. 1981, 1983 y 1985–1986.

que interrumpiría el término prescriptivo de acuerdo con el Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303.[12]

Con relación a la reclamación extrajudicial, en *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 D.P.R. 471, 476 (1980), adoptamos la posición del tratadista Díez-Picazo al expresar:

> "Reclamación vale, en principio, tanto como exigencia o intimación. Es decir: se trata de un acto por el cual el titular de un derecho subjetivo o de una facultad se dirige al sujeto pasivo de dicho derecho o de dicha facultad requiriéndole para que adopte el comportamiento debido. La reclamación es pues una pretensión en sentido técnico."

Aplicando dichos principios, en *Srio. del Trabajo v. F.H. Co., Inc.*, supra, consideramos la notificación al patrono de una querella ante la Unidad Antidiscrimen, una reclamación extrajudicial que tiene el efecto de interrumpir la prescripción.[13] La norma allí enunciada es aplicable a la situación ante nuestra consideración. Una querella presentada ante la E.E.O.C. *siempre* será diferida por esta agencia a la Unidad Antidiscrimen, independien-

---

[12] Por medio de la Ley Núm. 10 de 31 de mayo de 1991, se enmendó el Art. 5 de la Ley Núm. 100, *supra*, 29 L.P.R.A. sec. 150. En lo pertinente, ahora lee:

"Cuando se presente una querella por discrimen en el Departamento del Trabajo y Recursos Humanos, el término prescriptivo de un año para iniciar la acción judicial *quedará interrumpido al notificársele la querella al patrono o querellado*, siempre y cuando que la notificación se efectúe dentro de dicho término prescriptivo. Dicho término prescriptivo *quedará, además, en suspenso o congelado mientras la querella se continúe tramitando* en el Departamento del Trabajo y Recursos Humanos y no se haya notificado al querellado la determinación del Secretario de dicho Departamento sobre la reclamación. Si mientras se está tramitando la reclamación en el Departamento del Trabajo y Recursos Humanos, el querellante solicita que se le permita retirar la querella o manifiesta que no desea continuar con dicho trámite, *el término prescriptivo antes aludido comenzará nuevamente a partir de la fecha en que el Secretario del Trabajo y Recursos Humanos notifique de su determinación a las partes.* En los demás casos, el término prescriptivo se interrumpirá con la reclamación extrajudicial, con la radicación de la acción judicial correspondiente o por el reconocimiento de la deuda por parte del patrono o de su agente autorizado." (Énfasis suplido.) 29 L.P.R.A. sec. 150.

[13] En el Reglamento general para administrar la Núm. 100, *supra*, se establecen los requisitos que debe contener una querella.

temente del hecho de que ésta sea o no procesada por dicha Unidad a base de lo acordado en el *Worksharing Agreement* o si la agencia estatal determina que no la procesará. El efecto práctico de este procedimiento es que presentar un cargo ante la E.E.O.C. equivale a presentar el cargo ante la Unidad Antidiscrimen, ya que el mismo siempre le será diferido a esta última y notificado al querellado.

Nos queda por determinar si dicho término prescriptivo queda suspendido durante el procesamiento del cargo ante la E.E.O.C., al igual que ocurre cuando se presenta el cargo ante la Unidad Antidiscrimen. Con relación a esto último, en *Cintrón v. E.L.A.*, 127 D.P.R. 582, 593–594 (1990), expresamos:

> Así que, para efectos de interrumpir la prescripción, la acción administrativa instada por la querellante dentro del término prescriptivo y ante la Unidad Antidiscrimen era idéntica a la que instó el Secretario del Trabajo en el foro judicial. De ahí el porqué su notificación al patrono interrumpió el término prescriptivo de la acción civil en reclamación de daños y perjuicios.
> Bajo ese esquema legislativo, presente en *Srio. del Trabajo v. F.H. Co., Inc.*, supra, era forzoso concluir que la presentación de la querella administrativa era la pretensión o reclamación extrajudicial eficaz para interrumpir el término prescriptivo. (Énfasis suprimido y escolio omitido.)

■ Tomando en consideración lo antes expresado, concluimos que por la relación existente entre la E.E.O.C. y la Unidad Antidiscrimen, la tramitación de una querella por la E.E.O.C., bajo los términos del *Worksharing Agreement*, tiene el efecto de suspender el término prescriptivo de un (1) año para acudir al tribunal al amparo de la Ley Núm. 100, *supra*, hasta tanto finalice el trámite administrativo.[14] A igual conclusión llegó el Noveno Cir-

---

[14] El *Worksharing Agreement* de la E.E.O.C. con la Unidad Antidiscrimen expresa:

"In recognition of the common jurisdiction and goals of the two agencies, the Unit and the EEOC concurr in this Worksharing Agreement which is designed to provide individuals with an efficient procedure of obtaining redress for their grievan-

cuito del Tribunal de Apelaciones en *Salgado v. Atlantic Richfield Co.*, 823 F.2d 1322 (9no Cir. 1987). Allí el tribunal expresó que los procedimientos y remedios federales y estatales contra el discrimen en el empleo están totalmente integrados y relacionados. Entendió que la relación práctica entre el Título VII y la ley estatal, según incorporada en el *Worksharing Agreement,* provee la base para la suspensión del término prescriptivo de un (1) año para acudir al tribunal durante los procedimientos ante la E.E.O.C.

 La norma que hoy adoptamos no es otra cosa que la aplicación del principio firmemente establecido en nuestro Derecho de que la interrupción es la manifestación inequívoca de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo. *Feliciano v. A.A.A.,* 93 D.P.R. 655 (1960). Después de todo, la institución de la prescripción extintiva se fundamenta en el imperativo de castigar la inercia en el ejercicio de los derechos y evitar los litigios difíciles de adjudicar por la antigüedad de las reclamaciones. *De Jesús v. Chardón,* 116 D.P.R. 238 (1985). En *Zambrana Maldonado v. E.L.A.,* 129 D.P.R. 740 (1992), citando con aprobación Díez-Picazo, expresamos que la reclamación, en cualquier forma en que sea hecha, posee valor interruptivo y nada se opone a que los derechos prescriptibles sean prolongados indefinidamente. También hemos reconocido que la presentación de una demanda ante un foro inapropiado tiene un valor interruptivo por ser clara la voluntad del titular de hacer valer sus derechos. *Durán Cepeda v. Morales Lebrón,* 112 D.P.R. 623 (1982).

En el caso de autos, la recurrente demostró cabalmente su interés en vindicar sus derechos. Acudió en un tiempo

---

ces under the relevant Commonwealth of Puerto Rico laws and federal laws. Inasmuch as it has been agreed between the Commonwealth of Puerto Rico and the Equal Employment Opportunity Commission (EEOC), that it is desirable to effect procedures to minimize duplication of effort in the handling of deferred charges, and to achieve maximum consistency of purpose and results, the following is hereby agreed[.]"

razonablemente corto ante la E.E.O.C., la cual procesó su querella luego de haber renunciado la Unidad Antidiscrimen a su derecho a procesarla. Tomando en cuenta la relación de cooperación tan estrecha que existe entre ambas agencias, podemos considerar que los procedimientos ante la E.E.O.C. reemplazaron los estatales. La política pública, tanto en la esfera federal como en la local, es la de proveer los mecanismos administrativos necesarios para hacer viable la conciliación y resolución extrajudicial de los problemas laborales. Resolver que la utilización de estos medios expone al empleado a la pérdida del derecho a traer una acción ante el foro judicial sería menoscabar el esquema establecido por el Estado para implantar esta importante política pública. Debe tenerse presente que el trámite administrativo es un requisito para poder demandar al amparo del Título VII, o sea, que el patrono es consciente y está preparado para una posible acción judicial una vez finalizados dichos trámites. En nada lo perjudica la espera.

■ Todos estos factores, unidos al interés apremiante de proteger al obrero contra el discrimen, nos llevan a concluir que el término prescriptivo de un (1) año para presentar una demanda al amparo de la Ley Núm. 100, *supra*, queda suspendido durante el procesamiento de un cargo ante la E.E.O.C. Dicho término de un (1) año comenzará nuevamente a correr al darse por terminados los procedimientos ante la agencia. Nuestro más alto sentido de justicia nos obliga a llegar a este resultado para así darle un valor real y práctico a los instrumentos que tiene disponibles el trabajador para hacer valer sus derechos, al mismo tiempo que se fomenta la utilización de los mecanismos de conciliación para la solución de los problemas laborales.

Por todo lo antes expuesto, *se dictará sentencia revocando la emitida por el Tribunal Superior, Sala de Arecibo, el 31 de octubre de 1991 y devolviendo el caso al foro de instancia para que continúen los procedimientos de forma compatible con esta opinión.*