EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| María Umpierre Biascoechea<br><br>    Recurrida<br><br>        v.<br><br> Banco Popular de Puerto Rico,<br>Jesús Cáez<br><br>        Peticionarios | Certiorari<br><br>2007 TSPR 21<br><br>170 DPR _____ |

Número del Caso: CC-2005-554

Fecha: 5 de febrero de 2007

Tribunal de Apelaciones:

        Región Judicial de Bayamón

Juez Ponente:

        Hon. Héctor Urgell Cuebas

Abogados de la Parte Peticionaria:

                Lcdo. José J. Santiago Meléndez
                Lcdo. Carlos A. Padilla Vélez
                Lcdo. Carlos F. López López

Abogado de la Parte Recurrida:

                Lcdo. Miguel A. Negrón-Matta

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Umpierre Biascoechea

    Recurrida

       v.

                              CC-2005-554

Banco Popular de Puerto Rico,
Jesús Cáez

    Peticionarios

SENTENCIA

San Juan, Puerto Rico a 5 de febrero de 2007

Acude ante nosotros el Banco Popular de Puerto Rico de una sentencia dictada por el Tribunal de Apelaciones en la que se confirmó la previa determinación del Tribunal de Primera Instancia, negándose a desestimar el pleito de epígrafe por prescripción según alegaba el Banco.

El foro apelativo intermedio resolvió que el término prescriptivo en el caso de autos se interrumpió cuando la recurrida, María Umpierre Biascoechea, acudió a la Corporación del Fondo de Seguro del Estado a recibir tratamiento médico por motivo de unas alegadas presiones a las que la sometía su supervisor. Y que el mismo

comenzó a transcurrir nuevamente a partir de la resolución final de dicha agencia.

Expedimos el recurso el 14 de octubre de 2005. Contamos con el beneficio de la comparecencia de las partes por lo que estamos preparados para resolver y procedemos a así hacerlo. Analizado los argumentos de las partes en este caso, se revoca el dictamen del Tribunal de Apelaciones y se desestima la demanda instada por cuanto la misma estaba prescrita.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emite Opinión de conformidad a la que se le une el Juez Presidente señor Hernández Denton. El Juez Asociado señor Fuster Berlingeri y la Jueza Asociada señora Fiol Matta disienten con opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Umpierre Biascoechea

    Recurrida

        v.

Banco Popular de Puerto Rico,
Jesús Cáez

    Peticionarios

CC-2005-554

Opinión de Conformidad emitida por la Juez Asociada señora Rodríguez
Rodríguez a la que se une el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico a 5 de febrero de 2007

El caso de marras nos brindó la oportunidad de resolver cuándo comienza a transcurrir el término prescriptivo de un año para instar una reclamación por hostigamiento sexual en su modalidad de ambiente hostil. Hecha tal determinación, se debía auscultar si dicho término se interrumpe cuando la empleada perjudicada acude a la Corporación del Fondo del Seguro del Estado para recibir tratamiento por los daños que el alegado ambiente hostil le produjo.

I

La recurrida, María Umpierre Biascoechea comenzó a trabajar en el Banco Popular de Puerto Rico (el "Banco" o "Banco Popular"), el 2 de enero de 1998.

Allí se desempeñaba como cajera-receptora ("teller"). Durante el período de tiempo que laboró en la Sucursal de Altamira del Banco Popular, alegadamente fue víctima de un patrón de hostigamiento sexual por parte de su supervisor inmediato, el codemandado Sr. Jesús Cáez. El 4 de febrero de 2000, ocurrió un último incidente de alegado hostigamiento cuando el señor Cáez le gritó a la señora Umpierre Biascoechea en presencia de algunos compañeros de trabajo y clientes, por ésta haberse ausentado de sus labores sin notificación previa. Luego de esa fecha, la recurrida no se presentó a trabajar en el Banco.

A raíz de lo sucedido, la señora Umpierre Biascoechea se reunió con el gerente de la sucursal, el Sr. Javier Vélez, para brindarle su versión de lo ocurrido así como para informarle sobre los problemas que confrontaba con su supervisor.[1] En dicha reunión, la recurrida notificó que había acudido a un médico privado que le había recomendado descanso por varias semanas por estar sufriendo de una depresión severa. Ante tal situación, el 7 de febrero de 2000 el gerente Vélez completó un informe patronal y refirió a la recurrida a la Corporación del Fondo del Seguro del Estado (el "Fondo").

La señora Umpierre Biascoechea acudió al Fondo y alegó "que debido a una serie de incidentes con su supervisor, quien la presionaba constantemente, se ha afectado

---

[1] No surge claramente de los autos si la recurrida Umpierre Biascoechea le comunicó a sus superiores en esa reunión sobre el patrón de hostigamiento al que fue alegadamente sometida.

emocionalmente."[2]    El 8 de febrero de 2000, el Fondo le recomendó recibir tratamiento en descanso.   Sin embargo, subsiguientemente, la agencia emitió una resolución, de fecha 19 de julio de 2001 y notificada el 23 de julio de 2001, en la cual concluyó que la señora Umpierre Biascoechea padecía de un desorden depresivo atípico, **no relacionado con el empleo**.   En su consecuencia, el caso ante el Fondo fue cerrado y archivado.

Mientras se encontraba en descanso, y antes de la notificación del Fondo, la recurrida presentó su carta de renuncia al Banco, con fecha a manuscrito de 12 de marzo de 2000.[3]   El 13 de marzo de 2001, la representación legal de la recurrida envió una misiva al Banco Popular reclamando extrajudicialmente a éste y al señor Cáez, por el ambiente hostil al cual estuvo expuesta la recurrida y que culminó con su renuncia involuntaria.

El 15 de junio de 2001, previo a recibirse la notificación del Fondo, la señora Umpierre Biascoechea presentó una demanda ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, alegando haber sido hostigada

---

[2] Véase, Decisión del Administrador Sobre: Relación Causal – Compensabilidad – Condición Emocional No Relacionado, apéndice del recurso de *certiorari*, pág. 181.

[3] Existe una alegada controversia de hecho en cuanto a la fecha exacta en que se notificó la renuncia de la recurrida al Banco Popular.   Según consta en el expediente, la carta de renuncia tiene fecha a manuscrito de 12 de marzo de 2000.   Sin embargo, en un documento preparado por el Banco Popular, titulado Alegación Hostigamiento Sexual María Umpierre vs. Jesús Cáez, aparece que la referida carta de renuncia fue entregada el día 13 de marzo de 2001.   En vista de la conclusión a que llegamos la referida "controversia" es claramente inconsecuente para la solución del caso.

sexualmente por el señor Cáez, lo que le ocasionó daños y angustias mentales ascendentes a $100,000.00. La demanda se presentó al amparo de la Ley Núm. 69 de 6 de julio de 1985, 29 L.P.R.A. secs. 1321 *et seq.*, y la Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. secs. 155 *et seq*. Se adujo en la misma que el Banco Popular era responsable solidariamente con el señor Cáez de sus daños, por tener conocimiento de los alegados actos de hostigamiento sexual y no tomar medidas correctivas para evitar los mismos.

Ambos codemandados ("los peticionarios") contestaron oportunamente la demanda. Luego de varios trámites procesales, presentaron conjuntamente una solicitud de sentencia sumaria. En ella plantearon, esencialmente, que la reclamación por hostigamiento sexual al amparo de la Ley Núm. 17 estaba prescrita y, en la alternativa, que los hechos alegados no fueron lo suficientemente severos como para configurar una causa de acción por hostigamiento sexual en ninguna de sus modalidades.

Sobre la alegación de prescripción, los peticionarios sostuvieron que el último de los alegados actos de hostigamiento sexual ocurrió el 4 de febrero de 2000 y era a partir de esa fecha que comenzaba a transcurrir el término prescriptivo de un año para presentar su reclamación judicial o, para reclamar extrajudicalmente por los daños sufridos. Habida cuenta que ninguna de las dos cosas había ocurrido dentro de ese término, forzoso era concluir que la demanda instada estaba prescrita.

Arguyeron además que, aún tomando como inicio del plazo la fecha de renuncia el 12 de marzo de 2000, la demanda estaba igualmente prescrita porque la reclamación extrajudicial se instó un día después de haber vencido el plazo prescriptivo.

La recurrida se opuso a la solicitud de los demandados. Adujo, que según los propios documentos preparados por el Banco Popular, su renuncia se presentó el 13 de marzo de 2000 y es a partir de esa fecha que comienza a computarse el plazo prescriptivo. Conforme a ello, la reclamación extrajudicial del 13 de marzo del siguiente año interrumpió oportunamente el término prescriptivo, en consecuencia, la demanda fue presentada dentro del término previsto. No obstante esta argumentación, la recurrida planteó que el término prescriptivo quedó interrumpido por el referido al Fondo y comenzó a transcurrir nuevamente con la resolución final de esta agencia que su condición no estaba relacionada con su trabajo.

Los peticionarios replicaron y señalaron que una acción por hostigamiento sexual está excluida de la inmunidad patronal y de la exclusividad de remedios de la Ley de Compensaciones por Accidentes de Trabajo por constituir actos intencionales y discriminatorios, por lo que una reclamante no tiene que esperar a la determinación final del Fondo para acudir al tribunal e instar la acción correspondiente.

Trabada así la controversia, el Tribunal de Primera Instancia declaró sin lugar la moción de sentencia sumaria presentada. De la intricada Minuta de la vista celebrada se desprende que el tribunal concluyó que, toda vez que el Banco había referido a la señora Umpierre Biascoechea al Fondo por el alegado hostigamiento sexual, el término prescriptivo comenzaba a transcurrir en la fecha en que el Fondo determinó que su condición no estaba relacionada con el empleo. Es decir, que la fecha a partir de la cual se computaría el término de un año para instar la correspondiente reclamación judicial era el 19 de julio de 2001. Véase apéndice del recurso de *certiorari*, págs. 348-349.

Inconformes con dicha determinación, los peticionarios acudieron al Tribunal de Apelaciones solicitando, *inter alia*, la desestimación del presente pleito por estar prescrita la reclamación. El foro apelativo intermedio resolvió que el término prescriptivo en el caso de autos quedó interrumpido al acudir la perjudicada al Fondo y comenzó a transcurrir nuevamente a partir de la resolución final de dicha agencia. El tribunal utilizó como fundamento nuestras decisiones en *Padín v. Cía. de Fomento Industrial*, 150 D.P.R. 403 (1998) y *Vega Lozada v. J. Pérez & Cía.*, 135 D.P.R. 746 (1994). Por tal razón, se confirmó al tribunal de instancia, concluyendo que la presente causa de acción fue incoada dentro del término provisto de un año.

Insatisfecho aún, los peticionarios presentaron un recurso de *certiorari* ante este Tribunal. En el mismo sostuvieron que el tribunal *a quo* erró "al concluir que la reclamación por alegados daños y perjuicios por hostigamiento sexual no estaba prescrita, porque el plazo prescriptivo de un (1) año quedó interrumpido al acogerse la demandante a las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo y hasta tanto el Fondo del Seguro del Estado no emitiese su determinación sobre si la reclamación era o no compensable." Expedimos

## II

Los dos asuntos principales a resolver en esta ocasión son: Primero, ¿cuándo comienza a correr el término prescriptivo en una causa de acción por hostigamiento sexual en su modalidad de ambiente hostil? Segundo, si la referida reclamación se interrumpe cuando la empleada agraviada es referida por su patrono al Fondo para recibir tratamiento médico por los alegados daños sufridos como consecuencia del ambiente hostil que invoca.

## A

La Constitución del Estado Libre Asociado de Puerto Rico, en su Artículo II, Sección 1, establece que "la dignidad del ser humano es inviolable" y proscribe el discrimen por motivo de raza, color, sexo, nacimiento, origen o condición social, ideas políticas o religiosas. Siguiendo este mandato constitucional, la Asamblea Legislativa ha aprobado variada legislación de naturaleza

indemnizatoria dirigida a implantar la política pública del Estado contra el discrimen incluyendo, en lo que nos concierne, el discrimen por razón de sexo.

Entre las leyes aprobadas se encuentra la Ley Núm. 69 de 6 de julio de 1985, 29 L.P.R.A. secs. 1321 *et seq.*, la cual proscribe, específicamente, el discrimen en el empleo por razón de sexo.  Posteriormente, la Asamblea Legislativa promulgó la Ley Núm. 17 de 22 de abril de 1988 ("Ley Núm. 17"), 29 L.P.R.A. secs. 155 *et seq.*, mejor conocida como la Ley de Hostigamiento Sexual en el Empleo.  Ésta persigue la erradicación del hostigamiento sexual del taller empleo y establece, entre otras cosas, una causa de acción en daños por su violación.  Art. 11, Ley Núm. 15, 29 L.P.R.A. sec. 155j.[4]

Ninguna de las disposiciones legales antes mencionadas, sin embargo, proveyó de un término prescriptivo para instar la reclamación civil que autorizaban.  En vista de ello, en *Suárez Ruiz v. Figueroa Colón*, 145 D.P.R. 142 (1998) nos dimos a la tarea de atender dicha omisión y establecimos que el término en

---

[4] Ante todo, el hostigamiento sexual es una de las manifestaciones típicas de la violencia de género, reflejo de discrimen y de desigualdad.  El acoso sexual es una expresión moderna con la que se designa un problema antiguo y de los más importantes con el que las mujeres han de enfrentarse en el trabajo, lo que no significa que sean las mujeres las únicas víctimas del acoso.

Es una práctica ilegal e indeseable que atenta contra la dignidad del ser humano.  De ahí la clara política pública que condena este comportamiento y le impone al patrono un deber afirmativo y continuo, hasta que el empleado cesa de trabajar, de velar porque este comportamiento no se suscite en el ambiente de trabajo.

cuestión era de un año.  A tales efectos, expresamos lo siguiente:

> Por constituir la Ley de Discrimen por Sexo en el Empleo [Ley Núm. 69] y la Ley de Hostigamiento Sexual en el Empleo [Ley Núm. 17] parte de un esquema legislativo dirigido a erradicar el discrimen por razón de sexo en el empleo, por éstas reconocer acciones de carácter indemnizatorio de naturaleza similar a las acciones instadas a tenor con la Ley Núm. 100 y a las acciones bajo el artículo 1802 del Código Civil y por iguales fundamentos a los esbozados en *Olmo v. Young & Rubicam of P.R., Inc.*, resolvemos que en ausencia de disposición legislativa, **el término prescriptivo de las acciones instadas a tenor con las mencionadas leyes es el de un (1) año**. (Énfasis nuestro.)

*Suárez Ruiz*, 145 D.P.R. pág. 146.

Como sabemos, el propósito de la prescripción es fomentar el pronto reclamo de los derechos a la misma vez que se procura la tranquilidad del obligado frente a la eterna pendencia de una acción civil en su contra.  La prescripción extintiva procura castigar la inercia en el ejercicio de los derechos, pues ello da lugar a una presunción legal de abandono, lo que conjuntamente con la exigencia de nuestro ordenamiento jurídico para eliminar la incertidumbre de las relaciones jurídicas, constituyen los basamentos de la prescripción extintiva.  Véase, *Ortiz Rivera v. PRTC*, res 10 de agosto de 2004, 162 D.P.R. ___, 2004 TSPR 133; *Vera v. Dr. Bravo*, res. 27 de febrero de 2004, 161 D.P.R. ___, 2004 TSPR 30.  Véase además, J. Santos Briz, *Tratado de Derecho Civil*, Ed. Bosch, Barcelona, España, 2003, pág. 763; J. Puig Brutau, *Caducidad, prescripción extintiva y usucapión*, 3ra ed., Ed.

Bosch, Barcelona, España, 1996, pág. 32; L. Díez Picazo, *La prescripción en el Código Civil*, Ed. Bosch, Barcelona, España, 1984, pág. 93; L. Díez Picazo y Ponce de León, *La prescripción extintiva en el Código Civil, En la Jurisprudencia del Tribunal Supremo*, Thomson-Civitas, Madrid, España, 2003.

En nuestra jurisdicción, la prescripción constituye un derecho sustantivo, *Maldonado v. Russe*, 153 D.P.R. 342, 347 (2001), *Vega Lozada v. J. Pérez & Cía. Inc.*, 135 D.P.R. 746, 753 (1994), que acarrea la desestimación de cualquier demanda presentada fuera del término establecido por ley. *Rimco, Inc. Pérez y Cía. de P.R., Inc.*, 130 D.P.R. 60, 65 (1992).

De ordinario, el término prescriptivo comienza a transcurrir desde que el agraviado tuvo conocimiento del daño y pudo ejercitar su causa de acción, lo que no necesariamente coincide con el momento en que se sufre el daño reparable. *Santiago v. Ríos Alonso*, 156 D.P.R. 181, 189 (2002) y casos allí citados. Véase además, Artículo 1868 del Código Civil, 31 L.P.R.A. sec. 5298; J. Puig Brutau, *Caducidad, prescripción extintiva y usucapión*, Ed. Bosch, Barcelona, 3ra ed., 1996, págs. 68-70. Como ya hemos indicado en el pasado, el plazo para la prescripción no corre contra quien por imposibilidad física o, por ignorancia del hecho causante del perjuicio o, por ignorancia de que puede ejercitar una acción, no ejerce su derecho. Si tal ignorancia es producto de la negligencia o

descuido del reclamante, no se aplaza el comienzo del transcurso del término. *Colón Prieto v. Géigel*, 115 D.P.R. 232, 244 (1984).

La pregunta que tenemos que hacernos en esta ocasión es cuál es el punto de partida --o momento inicial-- del cómputo (*dies a quo*) de la acción civil por hostigamiento sexual, de suerte que podamos determinar si la reclamación instada en este caso se ajustó a dicho término. Hemos reconocido que el momento exacto en que se conoce, o se debió conocer el daño, constituye un delicado problema de prueba e interpretación, debido a la variedad de "circunstancias en que se da el problema del conocimiento del daño." *Galib Frangie v. El Vocero*, 138 D.P.R. 560, 574 (1995). Véase también, *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347, 360 (1988); *Rivera Encarnación v. E.L.A.*, 113 D.P.R. 383, 385-386 (1982). Hechos distintos requerirán soluciones diversas. Esta determinación es particularmente delicada cuando se trata de daños producidos por un período prolongado de tiempo, como por ejemplo, los llamados daños continuados. L. Díez-Picazo y Ponce de León, *op. cit.,* pág. 246("La determinación del momento inicial de la prescripción suscita dificultades en los casos que se pueden llamar de daños continuados o de daños con secuela.")

El daño continuado se refiere a aquellos "producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias

lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hace también que se conozca  --por ser previsible-- el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de daño actual (aquel que ya ha acaecido), y de daño futuro previsible y por tanto cierto." H.M. Brau Del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, Pub. JTS, 1986, Vol. II, pág. 648. Véase, *Santiago v. Ríos Alonso, ante*, pág. 191. En estos casos nos enfocamos más en la causa de los daños que en el evento dañoso en particular. Es decir, el principio que anima la doctrina del daño continuado no descansa en la naturaleza intrínseca del perjuicio ocasionado por la perturbación y sí, en el carácter continuo o progresivo de la causa que lo ocasiona, la cual renueva constantemente la acción dañosa.

Este tipo de daños lo produce uno o más actos negligentes o culposos que, llegado determinado momento, la agraviada logra percatarse que las consecuencias lesivas ocasionadas continuarán en el futuro. En ese momento, por convertirse en un daño cierto, sobreviene una sola causa de acción resarcitoria por todas las consecuencias lesivas ininterrumpidas y sostenidas. Bajo esta categoría, los daños derivados del acto ilícito se estiman como una unidad y no como una pluralidad de daños particulares.

De lo anterior se coligen tres factores que caracterizan el daño continuado, a saber: 1) un acto o

varias actuaciones negligentes o culposas;[5] 2) que dichos actos unidos entre sí causen daños ininterrumpidos y sostenidos; y 3) que sea previsible que los daños continúen en el futuro. Este tercer criterio supone que existen unos daños "actuales" junto a otros que son "previsibles", aunque estos últimos no se verifiquen. Ello hace entonces que todos los daños sean ciertos. La certeza se fundamenta en que la afectada, una vez advierte de la naturaleza de los agravios ya experimentados y constata que los mismos tienen un patrón y están unidos por ser el resultado de una misma causa, logra comprender y puede razonablemente prever, que de mantenerse vigente la causa continuará sufriendo daños de la misma naturaleza hasta tanto no cese la misma.

La doctrina civilista moderna postula que ante la imposibilidad de fraccionar en etapas distintas los actos culposos o negligentes, ya que como hemos visto los daños continuados se producen sucesiva e ininterrumpidamente, el inicio del plazo prescriptivo para reclamar por estos daños comienza **en el momento de la producción del resultado definitivo o hasta que se verifique el último de los actos.** Ello, naturalmente presupone que ésta no confronta obstáculo alguno para ejercitar su causa de acción. Véase, F. Reglero Campos en M. Albaladejo, *Comentarios al Código*

---

[5] Este primer elemento coloca dentro del concepto de años continuados la situación de que un acto culposo atribuible a cierta persona o entidad es la causa próxima de una serie de daños resultantes. Es decir, que los daños en cuestión tienen una causa común. *Agosto Ortiz v. Municipio de Río Grande*, 143 D.P.R. 174, 184-185 (1997).

*Civil y Compilaciones Forales*, Ed. Rev. Der. Priv., Madrid, España, 1994, Tomo XXV, Vol. 2, pág. 458; J.L. Lacruz Berdejo, *Derecho de Obligaciones*, Ed. Bosch, Barcelona, España, 1995, 3ra ed., Vol. 2, pág. 518;  I. Sierra Gil de la Cuesta, *Comentario del Código Civil*, Ed. Bosch, Barcelona, España, 2000, Tomo 9, pág. 554.

Es decir, en caso de daños continuados el cómputo del plazo de prescripción no se inicia sino hasta la producción del definitivo resultado.  Comentando el tenor de la jurisprudencia del Tribunal Supremo español, el profesor Díez-Picazo y Ponce de León señala lo siguiente: "Las sentencias más modernas . . . **se inclinan por la idea de que el comienzo del plazo de prescripción se produce con la verificación total del daño. . . ."**  (Énfasis nuestro.)  L. Díez-Picazo y Ponce de León, *op. cit.*, pág. 246.[6]

---

[6]  Sobre este particular, confróntese la siguiente jurisprudencia que versa sobre la prescripción en situaciones que involucran daños de carácter continuo. *E.g.,* STS 10 de septiembre 1986 ("Debe indicarse que es doctrina igualmente constante de esta Sala que la computación de los plazos iniciales en la prescripción, **no puede comenzar sino a partir de que concluyan las actuaciones o presupuestos fácticos en que se apoye el ejercicio de la acción esgrimida. . . ."**) (Énfasis nuestro.) STS 12 diciembre 1980 (A. 4747)("En los casos de comportamiento ilícito continuado . . . no ha dejado de sostener la doctrina científica el criterio de que el día inicial de la prescripción será no el del comienzo del hecho sino **el de su verificación total . . .** parece justo iniciar el cómputo del tiempo para la posible reacción contra el acto antijurídico **el de su plena efectividad e incluso el de su cesación . . . ."**) (Énfasis nuestro.) STS 27 junio 1990 (A. 4900)("Por ser los daños de que se trata de los denominados continuados, esto es, aquellos que continuamente se están operando y produciendo, respecto de los cuales la Jurisprudencia de la Sala tiene declarado que **'el cómputo del plazo de prescripción no se inicia hasta la producción del definitivo resultado,** cuando no es posible

Nuestra jurisprudencia revela un criterio parecido al español. En *Capella v. Carreras*, 57 D.P.R. 258 (1940), resolvimos que los estorbos producen un daño continuo cuya causa de acción no comienza a prescribir hasta que cese el estorbo. Indicamos expresamente que cuando **"se trata de daños y perjuicios causados por actos continuos . . . [éstos] están latentes hasta que cesa la causa que los genera**. . . [E]n tal caso la acción dañosa se renueva de día a día. . . ."  (Énfasis nuestro.)  57 D.P.R., pág. 266.  Posteriormente nos hemos reafirmado en esta doctrina. *E.g.,  Arcelay v. Sánchez*, 77 D.P.R. 824, 837-839 (1955)(son daños continuados aquellos generados por los ruidos y pestes que producía una planta pasteurizadora); *Seda v. Miranda Hmnos. & Co.*, 88 D.P.R. 355, 361 (1963)(son daños continuados los ocasionados por una chimenea que despedía humos y ruidos).

A un resultado análogo llegamos en *Santiago v. Ríos Alonso*, *ante,* donde resolvimos que el término prescriptivo de una acción torticera derivada de la violencia doméstica tuvo su inicio cuando cesó dicha conducta. Estas decisiones, por supuesto, estuvieron matizadas por hechos particulares y por el interés público en evitar los

fraccionar en etapas diferentes o hechos diferenciados la serie proseguida' . . . no resultando siempre fácil determinar en la práctica cuándo se produce o ha producido ese 'definitivo resultado' que en relación con el concepto de daños continuados se nos ofrece como algo vivo, latente y conectado precisamente a la causa originadora y determinante de los mismos, que subsiste y se mantiene hasta su adecuada corrección.")  Véase también, STS 21 marzo 2005 (A. 3878);  STS 24 mayo 1993 (A. 3727).

estorbos y combatir la violencia doméstica.  Mas no dejan de apoyar la norma general que el término prescriptivo de las acciones sobre daños continuos comienza a transcurrir cuando se ha verificado la previsibilidad del daño y el fin de la conducta ilícita.[7]  Véase además, C. Irizarry Yunqué, *Responsabilidad Civil Extracontractual*, 4ta. Ed., 2000, pág. 730.

Pasemos en este momento a reseñar las características de la acción por hostigamiento sexual en su modalidad de ambiente hostil, para luego entonces determinar la naturaleza del daño resultante.

**B**

La delimitación del concepto concreto de acoso sexual en el trabajo presenta variadas dificultades debido a la complejidad de las relaciones interpesonales.  No empece, hemos reconocido dos modalidades de hostigamiento sexual, a saber: el hostigamiento sexual por ambiente hostil y el

---

[7] *Galib Frangie v. El Vocero*, 138 D.P.R. 560 (1995), no contradice cabalmente el principio aludido.  Allí se planteó que una serie de artículos periodísticos produjeron un daño continuo cuya causa de acción estuvo sujeta a la prescripción desde la fecha del último artículo.  Indicamos al respecto, "que las características señaladas, [respecto los daños en dicho caso], **no son suficientes para constituir un daño continuo.**"  (Énfasis nuestro.)  138 D.P.R., pág. 574.  Luego expresamos que "lo determinante en cuanto a los daños continuos es el momento cuando comienza la producción de los daños, que deberá tomarse en consideración como el inicio del término de prescripción, al presuponer que los perjudicados los conocían desde entonces y que pudieran ejercitar la causa de acción."  138 D.P.R., pág. 575.  Empero, habiéndose resuelto que no existía tal daño, estas expresiones constituyeron un *obiter dictum* que no debe oponerse al análisis más deliberado de *Capella Carreras, Arcelay, Seda* y *Santiago Ríos*.  *Cf.*, Álvarez González, Análisis del término del Tribunal Supremo de Puerto Rico: Responsabilidad civil extracontractual, 72 *Rev. Jur. U.P.R.* 615, 638-642 (2003).

llamado hostigamiento equivalente o *quid pro quo*. Bajo la primera vertiente, la que nos ocupa, "el hostigamiento sexual se produce cuando la conducta sexual para con un individuo tiene el efecto de interferir irrazonablemente con el desempeño de su trabajo o de crear en el mismo un ambiente intimidante, hostil u ofensivo." *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 D.P.R. 117, 131-132 (1990). La conducta puede afectar el funcionamiento y la efectividad de la víctima en el empleo, desalentar al empleado a permanecer en el mismo y dificultarle su progreso en su carrera. Véase, Art. 3(c), Ley Núm. 17, 29 L.P.R.A. sec. 155b(c). Véase además, *Afanador Irizarry v. Roger Electric*, 156 D.P.R. 651, 662 (2002); *In re Robles Sanabria*, 151 D.P.R. 483, 492 (2000).

Estas particularidades de la causa de acción hacen que la misma no sea fácilmente discernible por lo que se dificulta establecer una regla rígida para establecer cuándo comienza a correr el plazo prescriptivo. Adviértase además, que la ley establece que para determinar si una alegada conducta constituye hostigamiento sexual en el empleo se considerará la totalidad de las circunstancias en que ocurrieron los hechos. Es decir, es una determinación que se hace caso a caso. Art. 4, Ley Núm. 17, 29 L.P.R.A. sec. 155c.

Antes bien, por su propia naturaleza, el ambiente hostil involucra varios actos acaecidos a través de un período de tiempo que crean un ambiente de tal naturaleza

pernicioso como para violar la ley.  A estos efectos, expresamos en *Robles Sanabria*, *ante,* pág. 492, lo siguiente:

> Para establecer un caso *prima facie* de hostigamiento sexual por ambiente hostil, la parte promovente de la acción debe probar que ha ocurrido más de un incidente de conducta sexual ofensiva.  Un acto aislado o un mero 'piropo', aunque pudiera ser no deseado, no origina una causa de acción bajo esa modalidad. **De ahí que se diga que el hostigamiento por ambiente abusivo se caracteriza por su multiplicidad.** (Énfasis nuestro.)(Citas omitidas.)

Son los actos repetidos de naturaleza hostigante que unidos entre sí o vistos en conjunto, crean el ambiente abusivo y hostil, toda vez que cada acto por sí solo podría no ser lo suficientemente severo como para justificar una reclamación por hostigamiento sexual.  Habida cuenta que los daños se configuran por la concatenación de varios eventos aislados, que unidos entre sí configuran un patrón de comportamiento que procura un particular estado de aprehensión en la perjudicada, debemos concluir  que éstos necesariamente están enmarcados dentro de la categoría de daños continuados. *E.g.*, *Santiago Rivera v. Ríos Alonso*, *ante*.  Es evidente que hay una gran simetría o afinidad entre los daños reclamados a causa de un ambiente hostil y la doctrina del daño continuado.  Recordemos, como ya apuntamos, que en casos de daños continuados la atención se centra en el ambiente que ha producido la conducta proscrita que es la causa de los daños, y no en los actos por separado que contribuyen a crear ese ambiente, que son los eventos dañosos en particular.

A la luz de lo anterior, resolvemos que en el presente caso el término prescriptivo de un año para instar la reclamación de hostigamiento sexual por ambiente hostil comenzó a correr a partir del 4 de febrero de 2000, fecha en que la señora Umpierre Biascoechea, por motivo de un incidente que estimó hostigante con su supervisor inmediato, decidió no regresar a su trabajo. Es en este momento que finalizaron los eventos o actos de alegado hostigamiento. Una vez la recurrida no regresó a su trabajo cesó de estar expuesta al acto que le producía, a tenor con su alegación, los daños por los que reclamaba. Es decir, al no estar en su empleo ella no estaba expuesta a un ambiente hostil. Siendo imposible entonces la ocurrencia de nuevos actos de naturaleza hostigante, el punto de partida para el cómputo de la prescripción es el día que cesó de acudir a su empleo por ser ese el momento en que finalizó la alegada conducta prohibida.

La recurrida nos arguye que el término debe computarse a partir de la fecha en que sometió su carta de renuncia. No compartimos ese criterio. Ya para esa fecha la peticionaria no estaba expuesta al alegado ambiente hostil por el cual reclamó judicialmente. En cuyo caso, no podemos adoptar como punto de partida una fecha en la cual había cesado la conducta proscrita y se había producido ya el resultado definitivo del daño sufrido.

Esta postura es la que mejor se ajusta a las particularidades de la causa de acción por hostigamiento

sexual en la modalidad de ambiente hostil, procurando así hacer efectiva la política pública que anima la Ley de Hostigamiento Sexual. Al así resolver, tomamos en consideración que la prescripción es un instituto flexible que nos permite adecuar su alcance conforme las circunstancias, de suerte que se procure hacer cumplida justicia. "El Derecho representa no solo lucha *contra la injusticia*, sino también *por más justicia*." (Énfasis en original.) M. Zavala de González, *Actuaciones por daños*, Ed. Hammurabi, Buenos Aires, Argentina, 2004, pág. 239. Véase, *Vega v. J. Pérez & Cia., Inc.,* 135 D.P.R. 746, 754 (1994).

Conviene observar que la norma acogida responde, no sólo a nuestra jurisprudencia, sino también a los propósitos de la prescripción extintiva. Ésta viene a salvar la confianza de los deudores en la apariencia que genera la inercia del deudor conforme exige la equidad. También protege al demandado de las reclamaciones cuyo récord evidenciario ha desaparecido, y fomenta la estabilidad de las relaciones jurídicas.

Así mal puede sostener el causante de un daño continuo que la equidad vindica su confianza en la inercia del deudor durante aquel periodo de tiempo en que tuvo lugar su conducta reñida con la equidad. Igualmente, la perdida del récord evidenciarios que pueda ocurrir en estos casos habrá de ser atenuada, debido a la persistencia de la conducta, y

responderá en gran medida a las acciones del propio demandado y no exclusivamente a la inercia del deudor.

La norma acogida también procura una mayor estabilidad de las relaciones jurídicas. Evidentemente, la previsibilidad de un daño continuo puede configurarse antes de culminar la conducta dañina, como, por ejemplo, cuando se configura un "ambiente hostil" que dura varios años. Hemos reconocido, sin embargo, que a menudo resulta difícil determinar el momento preciso de la previsibilidad –*e.g.* el día que surgió un ambiente hostil  Tal dificultad hace incierta e inestable las relaciones jurídicas en estos casos.  Al añadirse el requisito de que haya cesado la conducta dañosa, se podrá determinar con mayor precisión cuándo comienza a correr los correspondientes términos prescriptivos, abonando así la estabilidad jurídica.

Conforme lo discutido anteriormente y al aplicarlo a los hechos de este caso, habría que concluir que la demanda instada estaba prescrita.  Ahora bien, el Tribunal de Apelaciones resolvió que la reclamación judicial no estaba prescrita habida cuenta que la misma quedó interrumpida por el referido hecho al Fondo de Seguro del Estado.  Tenemos entonces que evaluar este señalamiento.  Veamos.

**III**

Como apuntamos anteriormente, con la prescripción se pretende propiciar el pronto reclamo de un derecho, a la misma vez que procura ponerle coto a la incertidumbre de

una posible reclamación en contra del obligado. *Colón Prieto v. Géigel*, *ante*, a la pág. 243.

De conformidad con el Artículo 1873 del Código Civil, 31 L.P.R.A. sec. 5303, el término para instar una reclamación se interrumpe por su ejercicio ante los tribunales, por la reclamación extrajudicial del acreedor y por cualquier reconocimiento de deuda por parte del deudor. *Díaz de Diana v. AJAS Ins. Co.*, 110 D.P.R. 471 (1980). Díez Picazo, *op. cit.*, pág. 109. La reclamación extrajudicial que interrumpe el término prescriptivo de una acción puede manifestarse a través de variadas acciones ya que la ley no exige una forma especial para efectuar las mismas.

No obstante, toda reclamación extrajudicial debe cumplir con los siguientes requisitos para que tenga el efecto interruptor de la prescripción, a saber: (1) debe ser oportuna, lo que exige que se presente dentro del término establecido; (2) el reclamante debe poseer legitimación, por lo que la reclamación la debe ejercitar el titular del derecho o acción cuya prescripción pretende interrumpir; (3) el medio utilizado para realizar la reclamación debe ser el idóneo para ello; y, (4) debe existir identidad entre el derecho reclamado y aquél afectado por la prescripción. *Maldonado v. Russe, ante,* pág. 353.

Hemos resuelto que la presentación de una querella administrativa puede considerarse como una forma de

interrupción judicial. *E.g.*, *Matos Molero v. Roche Products, Inc.*, 132 D.P.R. 470, 486 (1993); *Srio. del Trabajo v. F.H. Cop., Inc.*, 116 D.P.R. 823, 824 (1985). Cuando ello ocurre, el término queda congelado durante la pendencia del trámite administrativo y comienza a computarse nuevamente al cesar la causa interruptiva, es decir, cuando se produzca la acción final de la agencia. *Suárez Ruiz v. Figueroa Colón*, *ante*, págs. 146-147 (1998); *De Jesús v. Chardón*, 116 D.P.R. 238 (1985).

En *Srio. del Trabajo v. F.H. Co.*, *ante*, resolvimos que la presentación de una querella administrativa ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos interrumpía el término prescriptivo para instar una reclamación de discrimen bajo la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146 et seq. Reconocimos, que la propia Ley Núm. 100 deposita en el Secretario del Trabajo y Recursos Humanos el deber de velar por el cumplimiento de las disposiciones contra el discrimen consignadas en la ley. En *Matos Molero, ante,* llegamos a idéntico resultado respecto una reclamación de discrimen instada ante la Oficina de Igualdad de Oportunidades en el Empleo ("EEOC", por sus siglas en inglés), al concluir que para efectos prácticos, presentar un cargo ante la EEOC equivale a presentar el cargo ante la Unidad Antidiscremen del Departamento del Trabajo y Recursos Humanos.

En ambas ocasiones fundamentamos nuestra decisión en dos criterios, a saber: primero, la existencia de una identidad de propósitos entre la acción administrativa y la civil, y segundo, que la notificación de la querella al patrono constituyó una reclamación extrajudicial bastante para interrumpir la prescripción.

Por otro lado, en *Suárez Díaz, ante*, se solicitó que extendiéramos la norma anteriormente esbozada a un procedimiento interno creado por el patrono para dilucidar quejas relacionadas con discrimen en el empleo, específicamente, querellas sobre hostigamiento sexual. Luego de analizar los requisitos antes mencionados, concluimos que la querella presentada ante el foro patronal no tuvo el efecto interruptor deseado. Indicamos que "el propósito de este tipo de acción judicial [la reclamación judicial por hostigamiento sexual] es imponer una responsabilidad civil y criminal al patrono, mientras que el trámite interno ante el patrono tiene como propósito investigar los casos de alegado hostigamiento sexual en el empleo y de ser necesario, tomar las medidas disciplinarias y correctivas correspondientes." 145 D.P.R., pág. 154. Además, apuntamos que la acción judicial persigue el resarcimiento del agraviado, mientras que el procedimiento interno sólo persigue "disciplinar al empleado hostigador y . . . eliminar cualquier ambiente hostil en el empleo." *Loc. cit.* Nos negamos así a concluir que la querella presentada tuvo efecto interruptor alguno sobre el término

prescriptivo para instar la correspondiente acción judicial.

Adicionalmente, en *Maldonado v. Russe*, *ante,* concluimos que la presentación de una querella ante el Negociado de Normas de Trabajo (el "Negociado") del Departamento del Trabajo por, entre otras cosas, discrimen por condición de embarazo no interrumpía el término prescriptivo para instar la reclamación judicial correspondiente. Ello así, toda vez que el Negociado no estaba "facultado para investigar las acciones por discrimen reconocidas por diversas legislaciones laborales, pues tal prerrogativa corresponde a la Unidad Antidiscrimen del Departamento del Trabajo." 153 D.P.R., pág. 355. [8]

En el caso de marras se nos ha planteado que el referido al Fondo de Seguro del Estado tuvo el efecto de interrumpir el término prescriptivo por lo que no fue sino hasta la decisión final del Fondo, que comenzó a transcurrir el término para reclamar judicialmente. Para atender este señalamiento, pasemos a evaluar el esquema regulador especial creado por la Ley de Compensaciones por Accidentes del Trabajo, a fin de determinar si el proceso administrativo ante el Fondo persigue propósitos afines a

---

[8] En *Cintrón v. E.L.A.*, 127 D.P.R. 582 (1986), interpretamos que el término prescriptivo de un año para incoar la acción por violación a derechos civiles no quedó interrumpido cuando el empleado destituido de su puesto acudió a J.A.S.A.P. Ello pues, las disposiciones legales aplicables no concedían a la agencia la facultad de responsabilizar civilmente a los patronos y sus remedios se limitaban a la reinstalación y los haberes dejados de percibir del empleado, remedios que se imponen al patrono y no necesariamente al causante del daño.

la reclamación judicial por actuaciones discriminatorias constitutivas de hostigamiento sexual.

**IV**

La Ley de Compensaciones por Accidentes del Trabajo (la "Ley de Compensaciones"), Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et seq.*, concede inmunidad absoluta a los patronos asegurados con el Fondo contra cualquier acción de daños y perjuicios que el obrero o empleado de ordinario pudiera instar en su contra en relación a accidentes laborales que originaron la lesión.[9] Esta legislación de carácter remedial, establece un esquema de aportación patronal compulsoria con el propósito de proveerle a los obreros que sufren alguna lesión o enfermedad que ocurra en el curso del trabajo y como consecuencia del mismo, un remedio rápido y eficiente, libre de las complejidades de una reclamación judicial ordinaria. *Martínez Rodríguez v. Bristol Myers*, 147 D.P.R. 383, 392-393 (1999); *Segarra Hernández v. Royal Bank*, 145 D.P.R. 178 (1993).

---

[9] Hemos sido enfáticos al extender la inmunidad patronal a los co-empleados --oficiales, supervisores, agentes o compañeros empleados-- cuyos actos negligentes o culposos hayan sido la causa del accidente, cuando sus actuaciones hayan surgido en el desempeño de los deberes generales de su empleo. *González Rivera v. Multiventas*, res. 19 de octubre de 2005, 165 D.P.R. ____, 2005 T.S.P.R. 149; *Guzmán Cotto v. E.L.A.*, 156 D.P.R. 693 (2002); *Rivera Santana v. Superior Packaging*, 132 D.P.R. 115 (1992). No obstante lo anterior, un oficial, agente o empleado será responsable bajo el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141, por los daños sufridos por un compañero empleado cuando el acto negligente sea distinto e independiente del deber del patrono de proveer un lugar seguro de empleo. *Guzmán Acevedo v. De Jesús Rivera*, 155 D.P.R. 296 (2001).

Tal esquema provee una responsabilidad objetiva social que pretende evitar que los empleados queden en una situación de desamparo al tener que demostrar en un juicio la negligencia del patrono para poder ser indemnizados. *Martínez Rodríguez v. Bristol Myers*, *ante*, págs. 392-393; *Santiago Hodge v. Parke Davis, Co.*, 126 D.P.R. 1, 9 (1990). Así pues, sin importar el grado de negligencia atribuible al patrono, el único remedio que tiene un obrero por una lesión ocurrida en el empleo es precisamente el que se dispone en la Ley de Compensaciones por Accidentes del Trabajo.  Art. 18 de la Ley de Compensaciones, 11 L.P.R.A. sec. 21.  Ello claro está, siempre y cuando el patrono esté asegurado.

Es menester enfatizar que la protección laboral "se extiende [exclusivamente] a las lesiones sufridas como consecuencia de accidentes que provengan de cualquier acto o función inherente al trabajo de un empleado u obrero, que ocurran en el curso de dicho trabajo o como consecuencia de éste."  *Lebrón Bonilla v. E.L.A.*, 155 D.P.R. 475, 484 (2001); *Ortiz Pérez v. F.S.E.*, 137 D.P.R. 367, 373 (1994). Debido a ello, la Ley de Compensaciones no aplica a las lesiones del trabajador producidas **intencionalmente por el patrono, como lo son las prácticas discriminatorias, toda vez que éstas no se pueden considerar como inherentes a, o relacionadas con, el empleo.**  *Segarra Hernández v. Royal Bank*, *ante*, pág. 196; *Alonso García v. Comisión Industrial*, 102 D.P.R. 689, 695-699 (1974).  Con enorme claridad

indicamos lo siguiente en *Odriozola v. Superior Cosmetic Dist. Corp.*, 116 D.P.R. 485, 501 (1985): "No puede alegarse seriamente que una práctica discriminatoria sea inherente al empleo.  Tampoco proviene de un acto del obrero, sino de una actuación del patrono . . . . Tan ajeno al trabajo es el discrimen que se ha creado en Puerto Rico una ley especial para castigarlo: la Ley Núm. 100."  Antes bien, al no ser compensables los daños producidos por el discrimen no opera la inmunidad patronal y exclusividad de remedios que ordena la legislación laboral.  *Íbid.*

A la luz de la discusión que antecede no podemos concluir que exista identidad de propósitos entre la acción judicial para reclamar por hostigamiento sexual en el empleo en la modalidad de ambiente hostil, y el esquema rehabilitador que provee el Fondo del Seguro del Estado. Adviértase, como señalamos, que la reclamación ante el Fondo persigue proveer sostenimiento económico y tratamiento médico adecuado al empleado que **ha sufrido daños por un accidente o lesión en el trabajo**.  Pero bajo ningún supuesto ese daño puede ser de naturaleza intencional como lo es el discrimen pues éstos no son daños inherentes al empleo.

La acción judicial basada en la Ley Núm. 17 es precisamente uno el mecanismos disponible al empleado para resarcir su daño.  Por lo tanto, ésta provee el remedio que no atiende el Fondo.  Siendo ello así, no existe identidad de propósitos entre la acción administrativa ante el Fondo

del Seguro del Estado y la judicial instada al amparo de la Ley Núm. 17, que nos permita resolver que la acción ante el Fondo tuvo el efecto de interrumpir el término prescriptivo aplicable en este caso.

Ciertamente, el patrono tiene un deber legal de referir al Fondo a un empleado que le dice que ha sufrido un daño como consecuencia de un incidente ocurrido mientras se encontraba trabajando.  11 L.P.R.A. sec. 14.  Pero, cuando se trata de hostigamiento sexual, por haber sido esta causa expresamente excluida de los beneficios del Fondo, el empleado agraviado tiene una acción distinta e independiente ante el tribunal cuya prescripción empieza a partir del último incidente de hostigamiento.

En virtud de lo antes expuesto, resulta forzoso concluir que la reclamación judicial por hostigamiento sexual instada por la señora Umpierre Biascoechea no quedó "congelada" por haber sido ésta referida al Fondo de Seguro del Estado.[10]  Siendo ello así y no habiéndose presentado la correspondiente reclamación dentro del año previsto para ello, la demanda instada estaba prescrita.

Finalmente, debemos indicar que tanto el foro primario como el tribunal apelativo intermedio concluyeron que, a la luz de nuestros dictámenes en *Padín v. Cía. de Fomento Ind., ante*, y *Vega Lozada, ante*, el término para instar la

---

[10] Cabe destacar aquí que la demanda en este caso se presentó **antes** de que el Fondo del Seguro del Estado emitiese su determinación final de que los daños de la señora Umpierre no estaban cubiertos por el Fondo.

acción en este caso se había interrumpido con el referido al Fondo. Erraron al así resolver. Ninguno de dichos casos versaba sobre la interrupción extrajudicial de un término prescriptivo. En *Padín* y *Vega Lozada* se planteó, respectivamente, cuándo comenzaba para un obrero el término para instar una reclamación judicial contra un tercero responsable, o contra un patrono no asegurado. Lo allí dispuesto no es de aplicación al asunto sobre cómo se interrumpe administrativamente un plazo prescriptivo.

## IV

Por los fundamentos antes expuestos procede revocar el dictamen del Tribunal de Apelaciones y desestimar la reclamación instada, por lo que estoy conforme con la sentencia dictada.


Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Umpierre Biascoechea

     Recurrida

        vs.                                  CC-2005-554
Certiorari

Banco Popular de Puerto Rico,
Jesús Cáez

     Peticionarios

Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 5 DE FEBRERO DE 2007.

En mi criterio, en el caso de autos el término prescriptivo **se interrumpió** cuando el gerente del Banco refirió a la recurrida al Fondo del Seguro del Estado y ella acudió allí para procurar tratamiento para la condición que la afligía.

Estoy de acuerdo con la mayoría del Tribunal en cuanto a que el proceso ante el Fondo no persigue los mismos propósitos que una reclamación judicial. Pero en mi criterio lo verdaderamente crucial cuando se examina el asunto de la prescripción de un derecho es si el titular de éste **se cruzó de brazos totalmente** en cuanto a hacer uso del mismo. Si el titular **no hizo nada**

durante el término que tenía para ejercer el derecho, éste debe estimarse prescrito. Pero si el titular se valió en algo de su derecho, **aunque no sea su aprovechamiento óptimo**, no puede estimarse que el titular lo abandonó a tal grado que se materializó su extinción. La prescripción extintiva presupone el "silencio" del titular. Cualquier ejercicio, por poco que sea, contradice ese "silencio".

Es por lo anterior, que considero que la recurrida interrumpió aquí el término prescriptivo extrajudicialmente. **No hubo total inacción de su parte**. Los actos extrajudiciales, por su propia naturaleza, nunca pueden tener los rasgos definitorios de una acción judicial; no obstante, el Derecho admite plena eficacia a la interrupción extrajudicial de la prescripción. Lo determinante es si hubo tal inacción de parte del titular que debe estimarse que éste **abandonó su derecho**. Si hubo alguna acción extrajudicial, ésta interrumpe la prescripción porque sólo de la **total inacción** puede presumirse el abandono de un derecho. De otro modo no puede privarse a un titular de lo que legítimamente le pertenece. No debe olvidarse que la prescripción supone una expoliación, por lo que no debe estimarse qué ha ocurrido, excepto cuando es claro que el titular ha abandonado su derecho.

Como la mayoría del Tribunal resuelve de otro modo, yo disiento.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María Umpierre Biascochea
        Recurrida

                                        *Certiorari*

            v.

                            CC-2005-554

Banco Popular de Puerto Rico;
Jesús Cáez
        Peticionarios


Opinión disidente emitida por la Jueza Asociada señora FIOL MATTA


En San Juan, Puerto Rico, a 5 de febrero de 2007.

Disiento de la determinación que toma en el día de hoy una Mayoría de este Tribunal de desestimar la reclamación de daños por hostigamiento sexual al entender que la misma está prescrita. El resultado al que llega la Mayoría del Tribunal en el presente caso es contraria a la tendencia liberal sobre la prescripción de las acciones que hemos establecido en nuestra jurisprudencia, la cual requiere que consideremos los elementos subjetivos que afectan el *dies a quo* y el ejercicio efectivo de una acción judicial. Véase Santiago v. Ríos Alonso, 156 D.P.R. 181, 195 (2002).

El hostigamiento por ambiente hostil se produce cuando la conducta hacia una persona por razón de su

sexo interfiere irrazonablemente con el desempeño de su trabajo o crea un "ambiente intimidante, hostil u ofensivo". Rodríguez Meléndez v. Supermercados Amigo, Inc., 126 D.P.R. 117, 132 (1990). Esta vertiente del hostigamiento sexual se caracteriza por la multiplicidad de actos que la configura. In re Robles Sanabria, 151 D.P.R. 483, 500 (2000). La modalidad del ambiente hostil requiere que acaezcan varios actos discriminatorios repetidos que constituyan un patrón de conducta hostigante. Cada uno de estos actos unidos entre sí o en conjunto produce el efecto intimidante y hostil en la persona perjudicada. En Santiago v. Ríos Alonso, supra, pág. 192, resolvimos que una causa de acción fundamentada en unos incidentes repetidos que componen un cuadro de daños físicos, emocionales y físico constituye una modalidad de daños continuados. Por esta razón, entiendo que los daños producidos por hostigamiento sexual por ambiente hostil están enmarcados dentro de esta categoría.

Anteriormente, citando al tratadista Herminio Brau del Toro, hemos definido los daños continuados como "aquéllos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias lesivas ininterrumpidas, sostenidas, duraderas[,] sin interrupción, unidas entre sí, las cuales al ser conocidas hacen también que se conozca —por ser previsible— el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto

compuesto por elementos de un daño actual (aquel que ya ha acaecido) y de daño futuro previsible y por tanto cierto". Galib Frangie v. El Vocero, 138 D.P.R. 560, 575 (1995); Santiago v. Ríos Alonso, supra, pág. 190; Nazario v. ELA, 2003 T.S.P.R. 116, en la pág. 10. Véase H.M. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2nda Ed.,Publicaciones J.T.S., San Juan (1986), pág 648.

La doctrina civilista y nuestra jurisprudencia han señalado que una acción por daños continuados se renueva día a día hasta que la causa que los genera cesa. Capella v. Cabrera, 57 D.P.R. 258, 266 (1940); Arcelay v. Sánchez Martínez, 77 D.P.R. 824, 837-839 (1955). A su vez, en Santiago v. Ríos Alonso, supra, pág. 195, en el contexto de violencia doméstica, establecimos que el momento a partir del cual comienza a correr el término prescriptivo de la acción en daños es cuando la víctima de un ambiente de maltrato e intimidación rompe con el ciclo de barbarie, y cesa, por tanto, la conducta represiva hacia ésta. Por consiguiente, es forzoso concluir, al igual que lo hace la Opinión de conformidad, que el plazo prescriptivo para la acción que aquí nos ocupa comienza a transcurrir cuando se produce el resultado definitivo del daño o hasta que se verifique el último de los actos. Véase Nazario v. ELA, supra, en la pág. 11; Santiago v. Ríos Alonso, supra.

Al aplicar la doctrina antes explicada, tanto la Mayoría de este Tribunal como la Opinión de conformidad

resuelven revocar al Tribunal de Apelaciones y desestimar la acción de la demandante por prescripción. En particular, entiende la Opinión de conformidad que la exposición de la señora Umpierre Biascochea a un ambiente hostil cesó el 4 de febrero de 2000, fecha en que dejó de presentarse al trabajo. Expresa que es desde entonces que finalizaron los actos del alegado hostigamiento. No estoy de acuerdo.

En los hechos del presente caso, debe tenerse en cuenta que si bien la señora Umpierre Biascochea dejó de acudir a su trabajo el 4 de febrero de 2000, no presentó su renuncia en dicha fecha. No es hasta el 12 o 13 de marzo de 2000,[11] después de reunirse con la gerencia del Banco y de ser diagnosticada con depresión severa, que la demandante se siente compelida a renunciar a su puesto. Ese día de su renuncia como empleada del Banco debe ser el punto de partida para el cómputo de la prescripción de la acción en daños.

No podemos concluir que el que la perjudicada no haya asistido a su trabajo por un tiempo antes de renunciar finalizó, de por sí, el patrón de hostigamiento al que alegadamente era sometida. Hemos señalado que el hostigamiento por ambiente hostil interfiere

---

[11] Al examinar el expediente del caso, se desprende que existe una controversia de hecho en cuanto a la fecha exacta en la que la señora Umpierre Biascochea notificó su carta de renuncia al Banco Popular. La carta está fechada 12 de marzo de 2000, mientras que en algunos documentos del patrono se señala que la carta fue entregada el 13 de marzo de 2000.— Contrario a la Opinión de conformidad, y según explicaré más adelante, entiendo que la solución a esta controversia es determinante para poder establecer el *dies a quo* en el caso de autos.

irrazonablemente con el desempeño del trabajo de la víctima y causa en ésta ansiedad, debilita su autoestima y su confianza. Rodríguez Meléndez v. Supermercados Amigo, Inc., supra, pág. 132. Por eso, el ambiente hostil no se experimenta sólo con la cercanía física al hostigador y en la incomodidad próxima del entorno laboral. Mientras perdure la relación laboral, la ausencia física de la perjudicada de su lugar de trabajo no suprime los efectos del hostigamiento en su estado anímico y emocional ni altera la ansiedad producto del ambiente intimidante y hostil del lugar de trabajo al cual debe regresar. El ambiente hostil creado por el patrón de conducta hostigante no está delimitado por un espacio físico determinado sino que se encuentra también en un estado mental y emocional de humillación e intimidación que trasciende el lugar de trabajo. Ante esta realidad, la ausencia de la perjudicada de su lugar de trabajo es un intento suyo de minimizar los efectos nocivos del hostigamiento pero no finaliza de forma automática el ambiente hostil que según las alegaciones la afectaba y envilecía las condiciones de su empleo.

Como señalé anteriormente, tanto la Ley núm. 17 como nuestra jurisprudencia establecen que una de las manifestaciones del hostigamiento sexual es la de interferir de manera irrazonable con el desempeño del trabajo o afectar impermisiblemente las condiciones de empleo. Art. 3 Ley núm. 17, 29 L.P.R.A. sec. 155b; In re Robles Sanabria, supra, pág. 500; Rodríguez Meléndez v.

Supermercados Amigo, Inc., supra, pág. 132. No debemos pasar por alto que la señora Umpierre Biascochea vio sus condiciones de empleo afectadas de modo tan significativo e irrazonable que tuvo que ausentarse de su trabajo. Su decisión de alejarse de su lugar de empleo no fue caprichosa ni pueril, mas bien fue provocada directamente por el hostigamiento que alega haber sufrido constantemente y por el ambiente hostil que contaminaba su entorno laboral. La renuncia eventual de la señora Umpierre Biascochea fue para ella la solución más efectiva para cesar la conducta hostigante y poder desprenderse totalmente del ambiente hostil que sufría tanto en su lugar de trabajo como en su estado anímico frente a éste. Por eso, no es hasta que se vio obligada a renunciar a su trabajo, que se concretó el "resultado definitivo" del daño al que alude la Opinión de conformidad.  Dado que el daño definitivo (que incluye la pérdida de su trabajo) se produjo en un momento posterior al alegado último acto de hostigamiento sexual (que fue lo que provocó la ausencia inicial), es la fecha de la renuncia la que es determinante para el cómputo de la prescripción.

Por último, es necesario destacar otra razón de peso para concluir que la fecha de renuncia es la que determina el *dies a quo* en el caso de autos. Me refiero a la obligación del patrono de evitar el hostigamiento, que no cesó respecto a la señora Umpierre Biascochea cuando ella se ausentó de su trabajo.

La Ley núm. 17 tiene dos propósitos fundamentales, prohibir terminantemente el hostigamiento sexual en el empleo, por ser éste una forma de discrimen por razón de sexo que viola la dignidad humana, e imponer las responsabilidades pertinentes en caso de incumplimiento. Véase Art. 1 Ley núm. 17, supra, 29 L.P.R.A. sec. 155. Así, la ley establece expresamente el deber de todo patrono de "prevenir, desalentar y evitar el hostigamiento sexual en el empleo" y garantizar que los empleados "puedan trabajar con seguridad y dignidad". Art. 10 Ley núm. 17, supra, 29 L.P.R.A. sec. 155i. La violación por parte del patrono a su deber de mantener el centro de trabajo libre de hostigamiento sexual e intimidación contribuye a la manifestación del ambiente hostil, y es el fundamento de su responsabilidad por los daños causados a la víctima del hostigamiento. A estos efectos, la ley responsabiliza al patrono no sólo por sus propias acciones sino también por las actuaciones hostigantes de sus agentes o supervisores. Véase Art. 5 y 6 Ley núm. 17, supra, 29 L.P.R.A. secs. 155d-155e. El lenguaje de la Ley núm. 17 nos exige concluir que el deber de todo patrono de asegurarle a cada uno de sus empleados unas condiciones de trabajo libre de hostigamiento sexual es continuo e ineludible. Como bien señaló el Juez Asociado señor Negrón García en Sánchez v. Autoridad de Energía Eléctrica, 142 D.P.R. 880, 886 (1997) (Opinión concurrente), "[este deber] prosigue, en cuanto de

cada empleado en particular, hasta su último día de trabajo".

El último día de trabajo de la señora Umpierre Biascochea no fue el día en que huyó de un centro de empleo que según alega estaba cargado de intimidación, hostilidad y humillación. Su último día de trabajo fue el día de su renuncia. El deber del Banco de mantener un centro de trabajo libre de hostigamiento sexual e intimidación se extendió, respecto a las alegaciones de la señora Umpierre Biascochea, hasta ese día. Interpretar que la obligación del patrono fue interrumpida por la ausencia de la perjudicada, sería dar al traste con la máxima constitucional que exige la inviolabilidad de la dignidad del ser humano y con nuestra política pública imperante que busca erradicar el hostigamiento sexual en el empleo. El Banco tenía la responsabilidad de cumplir con su deber patronal para con su empleada hasta el día en que ésta dejó efectivamente de serlo. Es hasta ese momento que el patrono pudo tomar las medidas necesarias para establecer unas condiciones de empleo que permitieran el regreso de la señora Umpierre Biascochea a un ambiente laboral libre de hostigamiento e intimidación. Entre el último día de asistencia de la demandante a su trabajo y su renuncia, la obligación del patrono conforme a la Ley núm. 17 estaba vigente. Por eso, su posible responsabilidad ante el daño alegado por la señora Umpierre Biascochea no cesó durante este periodo. El que el patrono refiriese a la señora

Umpierre Biascochea al Fondo del Seguro del Estado no fue una medida apropiada ni suficiente para corregir la alegada situación de hostigamiento.

Por todo lo anterior, devolvería el caso al Tribunal de Primera Instancia para que se continúen los procedimientos y se resuelva la controversia en cuanto a la fecha exacta en que se notificó la renuncia de la señora Umpierre Biascochea al Banco Popular.[12] La solución a esta controversia de hecho será la que determine si la reclamación por daños instada en el caso de autos estaba prescrita. Siendo distinto el resultado al que llega una Mayoría de este Tribunal, disiento.


                                        Liana Fiol Matta
                                        Jueza Asociada

---

[12] Véase *supra* nota 1.