Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| GLORIBEL RAMOS JORDÁN<br><br>Recurrida<br><br>v.<br><br>QUEST DIAGNOSTIC OF PUERTO RICO<br><br>Peticionaria | KLCE202300817 | *Certiorari,* acogido como apelación, procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>BY2022CV05688<br><br>Sobre:<br>Despido Injustificado y otros |

Panel integrado por su presidente, el juez Rodríguez Casillas, el juez Salgado Schwarz y el juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de diciembre de 2023.

Comparece ante nos **Quest Diagnostics of Puerto Rico, Inc.** (en adelante, "Quest" o "apelante"), mediante recurso de *certiorari,* que para efecto del trámite y perfeccionamiento del recurso la acogemos como una apelación por tratarse de una *Sentencia Parcial y Resolución* emitida el 9 de julio de 2023 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "TPI" o "foro recurrido").[1]

Allí, se declaró **Ha Lugar** una moción de desistimiento voluntario mediante **Sentencia Parcial**; y, **No Ha Lugar** mediante **Resolución** a una moción de desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil, que buscaba desestimar la reclamación laboral presentada por la **Sra. Gloribel Ramos Jordán** (en adelante, "apelada" o "señora Ramos Jordán").

Examinado el presente recurso, se expide el auto de *certiorari,* y **modificamos** la Resolución recurrida. Veamos.

---
[1] Notificada a las partes el 10 de julio de 2023.

Número Identificador
SEN2023_____

**-I-**

El **21 de marzo de 2019** la señora Ramos Jordán fue suspendida de empleo y sueldo. Como resultado de dicha suspensión, el **3 de abril de 2019** la apelada presentó una *querella por discrimen por razón de impedimento* ante la Unidad Anti-Discrimen del Departamento del Trabajo y Recursos Humanos (en adelante, "UAD-DTRH"),[2] al amparo de la Ley ADA, conocida como la *Americans with Disabilities Act,* y la Ley Núm. 44-1985 conocida como *Ley de Igualdad de Oportunidades en el Empleo para Personas con Impedimentos.* En síntesis, alegó que, debido a un patrón de hostigamiento laboral, su salud mental y emocional se vio comprometida a tal magnitud que tuvo que eventualmente ser hospitalizada en una institución psiquiátrica.

Así las cosas, el **10 de abril de 2019** y, luego de una relación contractual de aproximadamente 14 años, la señora Ramos Jordán fue despedida de su empleo, y consecuentemente, el **5 de mayo de 2021**, la apelada presentó ante la UAD-DTRH una solicitud de permiso para litigar, la cual, fue respondida el **3 de agosto de 2021,** momento en que la UAD-DTRH notificó dicho permiso; además, del cierre del caso el 5 de mayo de 2021 ante la UAD y a notificar a la *Equal Employment Opportunity Commission* (en adelante, "EEOC").[3]

A tales efectos, el **19 de julio de 2022** la señora Ramos Jordán presentó en el TPI una **primera** reclamación laboral (caso Núm.: BY2022CV03666) en contra de su ex patrono. En resumen, la primera causa de acción estuvo fundada en la Ley ADA, *Americans with Disabilities Act*, según enmendada, y en la Ley Núm. 44-1985 para *Prohibir el Discrimen Contra las Personas con Impedimentos Físicos, Mentales o Sensoriales.* La segunda causa de acción se basó en la Ley Núm. 115-1991, *Ley de Represalias contra*

---

[2] Apéndice I del *Alegato en Oposición a Apelación Civil,* en las págs. 1-3.
[3] Apéndice II del *Alegato en Oposición a Apelación Civil,* en la pág. 4.

*el Empleado por Ofrecer Testimonio,* y, el resto de las alegaciones se fundaron en la Ley Núm. 80-1976, *Ley Sobre Despidos Injustificados,* y en el Artículo 1802 del derogado Código Civil de 1930.[4]

Sin embargo, luego de Quest presentara una moción de desestimación y la apelada solicitara el desistimiento voluntario, el **12 de octubre de 2022**, notificada el 13 del mismo mes y año, el TPI emitió una Sentencia en la que le concedió a la señora Ramos Jordán desistir voluntariamente de la referida reclamación y la misma fue confirmada en la Sentencia del Tribunal de Apelaciones en el caso núm. KLAN202200852.[5]

Por otra parte, el **1 de agosto de 2022** el *Equal Employment Opportunity Commission* (EEOC) emitió el *Right-to-Sue Letter,* relativa a las causas de acción al amparo de la Ley ADA y Ley Núm. 44-1985.[6]

En vista de lo anterior, el **7 de noviembre de 2022**, la señora Ramos Jordán insta una **segunda** reclamación laboral al amparo del procedimiento sumario laboral de la Ley Núm. 2,[7] por las mismas causas de acción: **(1)** *Ley de Igualdad de Oportunidades en el Empleo para Personas con Impedimentos,* según enmendada (en adelante, "Ley Núm. 44"), y el estatuto federal, *Americans with Disabilities Act* (en adelante, "Ley ADA"),[8] por negarle un acomodo razonable y ser objeto de un ambiente hostil por razón de impedimento; (2) *Ley de Represalias* (en adelante, "Ley Núm. 115"),[9] ya que aduce que fue despedida luego de presentar una querella en la UAD-DTRH; (3) Ley

---

[4] Aplicable al caso de autos por la fecha en que ocurrieron los hechos. Véase, Artículo 1815 del Nuevo Código Civil, 31 LPRA sec. 11720.

[5] Véase, la Sentencia del Tribunal de Apelaciones en el caso núm. KLAN202200852.

[6] Apéndice III del *Alegato en Oposición a Apelación Civil*, en la pág. 5.

[7] Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como la *Ley de Procedimiento Sumario de Reclamaciones Laborales,* 32 LPRA sec. 3118 *et seq.*

[8] La Ley Núm. 44 de 2 de julio de 1985, conocida como la *Ley de Igualdad de Oportunidades en el Empleo para Personas con Impedimentos*, según enmendada (Ley Núm. 44), 1 LPRA sec. 501; 42 USC 12101; *Rivera Flores v. Cía ABC,* 138 DPR 1, 5 (1995).

[9] Ley Núm. 115 de 1991, según enmendada. 29 LPRA sec. 194 *et seq.*

Núm. 80 de 30 de mayo de 1976 (en adelante, "Ley Núm. 80"), según enmendada,[10] por despido injustificado; y (4) Artículo 1802 del Código Civil de 1930,[11] por alegados daños y perjuicios.

El **7 de marzo de 2023**, Quest presentó una moción de desestimación en virtud de la Regla 10.2 (5) de Procedimiento Civil, alegando la defensa de que la apelada dejó de exponer una reclamación que justifique la concesión de un remedio.[12] En síntesis, adujo que las causas de acción al amparo de la Ley Núm. 80, Ley Núm. 44, Artículo 1802 CC, Ley ADA y Ley Núm. 115 estaban prescritas.[13]

El **18 de abril de 2023**, la señora Ramos Jordán presentó un escrito de oposición a la moción de desestimación y una solicitud de desistimiento parcial al amparo de la la Regla 39.1 de Procedimiento Civil. En resumen, solicitó el desistimiento voluntario de las causas de acción en virtud de la Ley Núm. 80 y el Artículo 1802 CC. No obstante, se opuso la moción de desestimación de las acciones instadas bajo la Ley Núm. 44, Ley ADA y Ley Núm. 115.[14]

El **10 de julio de 2023** el TPI notificó la Resolución y Sentencia Parcial. En la misma, emitió una **Sentencia Parcial** en la que declaró **Ha Lugar** la moción de desestimiento voluntario al amparo de la la Regla 39.1 de Procedimiento Civil, *supra,* de las causas de acción en virtud de la Ley Núm. 80 y el Artículo 1802 CC, presentada por la señora Ramos Jordán.[15] De otra parte, emitió una **Resolución** en la que declaró ***No Ha Lugar*** la solicitud de

---

[10] *Ley de Indemnización por Despido sin Justa Causa*, 29 LPRA sec. 185a *et seq.*, según enmendada.

[11] Código Civil de 1930, vigente al momento de los hechos, 31 LPRA Sec. 5145.

[12] 32 LPRA Ap. V, R. 10.2.

[13] El 9 de marzo de 2023, Quest presentó una solicitud de paralización al amparo de la Regla 39.4 de Procedimiento Civil.

[14] 18 de abril de 2023 la apelada se opuso a la solicitud de paralización presentada por Quest al amparo de la Regla 39.4 de Procedimiento Civil. En síntesis, adujo que la primera reclamación (Civil Núm. BY2022CV03666) fue desistida voluntariamente sin perjuicio y confirmada en apelación en la sentencia KLAN202200852.

[15] El TPI ordenó su notificación al amparo de la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3.

desestimación bajo la Ley Núm. 115 presentada por Quest y ordenó la continuación de los procedimientos en el caso.

Inconforme, Quest acudió ante nos el **20 de julio de 2023** mediante un recurso intitulado: *Petición de Certiorari.* En resumidas cuentas, imputa la comisión de los siguientes errores:

1) *Erró el TPI al no adjudicar la moción de desestimación en su totalidad y dejar en un limbo jurídico dos solicitudes de desestimación por prescripción; una respecto a la Ley 44 y otra en cuanto a la Ley ADA.*
2) *Erró el TPI al ignorar la solicitud de desestimación por prescripción de la causa de acción bajo la Ley 115 y, sin haber atendido ese planteamiento de umbral, haber dictaminado que, a su juicio, las alegaciones de la querella contienen hechos suficientes que podrían justificar la concesión de un remedio.*

**-II-**

Resumidos los hechos que originan la presente controversia, examinemos el derecho aplicable.

**-A-**

Sabido es que las alegaciones de una demanda tienen como propósito bosquejar o notificar a grandes rasgos cuáles son las reclamaciones y las defensas de las partes. En ese sentido, la Regla 6.1(a) de Procedimiento Civil dispone que una alegación que exponga una solicitud de remedio debe contener *"una relación sucinta y sencilla de la reclamación demostrativa de que el peticionario tiene derecho a un remedio"*.[16]

A tono con lo antes dicho, la Regla 10.2 de Procedimiento Civil establece —además de otras— la defensa de dejar de exponer una reclamación que justifique la concesión de un remedio como fundamento para solicitar la desestimación de una causa de acción.[17] En lo pertinente, la referida Regla dispone, que:

> *Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:*
> *(1) falta de jurisdicción sobre la materia;*

---

[16] Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V, R. 6.1(a). *Énfasis suplido.*
[17] 32 LPRA Ap. V, R. 10.2.

*(2) falta de jurisdicción sobre la persona;*
*(3) insuficiencia del emplazamiento;*
*(4) insuficiencia del diligenciamiento del emplazamiento;*
*(5) **dejar de exponer una reclamación que justifique la concesión de un remedio**;*
*(6) dejar de acumular una parte indispensable. [...].[18]*

En lo concerniente a nuestra controversia se ha establecido que, ante la presentación de una moción de desestimación basada en la quinta defensa de dicha Regla, los foros judiciales <u>*deben tomar como ciertas todas las alegaciones fácticas plasmadas en la demanda*</u>.[19] En ese sentido, están obligados a interpretar las aseveraciones de la parte demandante en forma conjunta, de la manera más favorable y liberal, formulando a su favor todas las inferencias que puedan asistirle.[20]

De esta forma, los tribunales deben razonar —*si a la luz de la situación más favorable al demandante y resolviendo las dudas a su favor*— la demanda es suficiente para constituir una reclamación válida.[21]

Conforme a lo antes expuesto, la causa de acción no debe ser desestimada a menos que el promovente de la moción demuestre que el demandante no tiene derecho a *remedio alguno* al amparo de cualquier estado de hechos que puedan ser evidenciados en apoyo a su causa de acción.[22]

En consecuencia, la desestimación procede cuando existen circunstancias que permiten a los tribunales determinar —sin ambages— que la demanda *adolece de todo mérito o que la parte no tiene derecho a obtener remedio alguno*.[23] En ese sentido, es apropiado reiterar que nuestro Tribunal Supremo ha sostenido firmemente la clara política pública judicial de que los casos se

---

[18] *Id. Énfasis suplido.*
[19] *Colón v. Lotería,* 167 DPR 625, 649 (2006).; *Roldán v. Lutrón, SM, Inc.,* 151 DPR 883, 889 (2000). *Énfasis suplido.*
[20] *Colón v. Lotería, supra,* pág. 649.
[21] *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013). *Énfasis suplido.*
[22] *Colón v. Lotería, supra,* pág. 649. *Énfasis suplido.*
[23] *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654 (2013). *Énfasis suplido.*

ventilen en sus méritos.[24] Como corolario a esa política, se ha recalcado que existe un trascendental interés en que todo litigante tenga su día en corte.[25]

**-B-**

La **prescripción extintiva** es la figura jurídica de carácter sustantivo que regula el tiempo de vida que tiene el acreedor de un derecho para hacerlo valer frente al deudor. Obliga al acreedor a actuar en un espacio temporal finito y le brinda certeza al deudor de que la causa de acción en su contra no lo perseguirá infinitamente.[26] Asimismo, la prescripción extintiva de un año se ha hecho extensiva a otras acciones indemnizatorias de naturaleza similar, siempre que sus efectos resarcitorios no se rijan por leyes especiales.[27]

El periodo de un año también se ha hecho extensivo a las acciones presentadas al amparo de la Ley Núm. 44-1985, la cual establece la obligación del patrono de proveer acomodo razonable en el lugar de trabajo a las personas con impedimentos.[28] Ello, toda vez que se trata de una acción de naturaleza indemnizatoria similar a la de daños y perjuicios.[29] Por lo tanto, le es aplicable la teoría cognoscitiva del daño y el término prescriptivo comenzará a transcurrir desde la fecha en que la persona conoció el agravio o debió conocerlo, y pudo efectivamente ejercer su causa de acción.[30]

---

[24] *Datiz v. Hospital Episcopal*, 163 DPR 10, 20 (2004).

[25] *Id.*

[26] *Ortiz v. P. R. Telephone*, 162 DPR 715, 733 (2004); *Campos v. Cia. Fom. Ind.*, 153 DPR 137, 143-144 (2001); *Galib Frangie v. El Vocero de PR*, 138 DPR 560, 566 (1995); *Culebra Enterprises, Corp. v. ELA*, 127 DPR 943, 950 (1991); *Colón Prieto v. Géigel*, 115 DPR 232, 243 (1984).

[27] *Olmo v. Young & Rubicam of P.R., Inc.,* 110 DPR 740, 743 (1981).

[28] La Ley Núm. 44 de 2 de julio de 1985, conocida como la *Ley de Igualdad de Oportunidades en el Empleo para Personas con Impedimentos*, según enmendada (Ley Núm. 44), 1 LPRA sec. 501. El Tribunal Supremo ha resuelto que si un empleado presenta una acción bajo la Ley ADA, entonces tiene la obligación de agotar los remedios administrativos ante el Departamento del Trabajo. En cambio, si elige el remedio provisto por la Ley Núm. 44, podrá escoger entre tramitar su reclamación directamente ante el foro judicial o presentar una querella en las agencias administrativas correspondientes. *Rivera Flores v. Cía ABC*, 138 DPR 1, 5-6 (1995).

[29] *Colón v. American Airlines*, Inc., KLAN0200250 de 22 de mayo de 2002 (Juez Martínez Torres); *Quiñones Márquez v. Banco de Desarrollo Económico*, KLAN980666 de 7 de febrero de 2000, (Juez Cordero).

[30] *Id.*

Como norma general, el punto de partida para computar el término prescriptivo en una acción en daños y perjuicios es la fecha en que el agraviado supo el daño y desde que pudo ejercitar su causa de acción.[31] Tal norma se conoce como la teoría cognoscitiva del daño, la cual dispone que la prescripción comenzará a transcurrir desde que la persona conoce el daño que ha sufrido y el autor del mismo.[32]

El momento en que se tiene conocimiento de que se ha sufrido un daño puede variar y puede ser difícil de apreciar en ciertas ocasiones.[33] Ello, toda vez que la determinación del momento exacto en que se conoce o debió razonablemente conocerse el daño, constituye un delicado problema de prueba e interpretación.[34] Lo determinante para establecer el inicio de la prescripción será el momento en que comienza la producción del daño.[35]

De otro lado, nuestro ordenamiento jurídico permite que el término prescriptivo de las acciones quede interrumpido por una de las siguientes causas: **(1)** por el ejercicio de la acción ante los tribunales; **(2)** por la reclamación extrajudicial del acreedor; y **(3)** por cualquier acto de reconocimiento de la deuda por el deudor.[36]

El Tribunal Supremo ha resuelto que la presentación de una querella administrativa puede considerarse como una forma de interrupción prescriptiva.[37] Para ello, la notificación de la querella presentada tiene que guardar identidad de propósitos con el trámite judicial. Como resultado de ello, el término prescriptivo quedará congelado por el tiempo que duren los procedimientos

---

[31] *Vega v. Pérez & Cía, Inc.*, 135 DPR 746, 754 (1994).

[32] Art. 1868 del Código Civil, 31 LPRA sec. 5298(2); *Vera v. Dr. Bravo*, 161 DPR 308, 322 (2004); *Allende Pérez v. García*, 150 DPR 892, 903 (2000); *Igartua de la Rosa v. ADT*, 147 DPR 318, 323-325 (1998).

[33] *Vera v. Dr. Bravo, supra*, pág. 742.

[34] *Delgado Rodríguez v. Nazario Ferrer*, 121 DPR 347, 360-361 (1998).

[35] *Santiago v. Ríos Alonso,* 156 DPR 181, 189 (2002).

[36] Art. 1873 del Código Civil, sec. 5303; *Meléndez v. Berríos*, 173 DPR 1010 (2008); *Mun. de San Juan v. Bosque Real*, SE, 158 DPR 743, 774 (2003); *Díaz de Diana v. AJAS Ins. Co.*, 110 DPR 471, 474 (1980).

[37] *Maldonado v. Russe*, 153 DPR 342, 354 (2001); *Suárez Ruiz v. Figueroa Colón,* supra*,* pág. 151.

administrativos y comienza a transcurrir nuevamente cuando la agencia efectué una determinación final.[38]

De igual forma, se puede interrumpir el término prescriptivo por la vía judicial. La interrupción se mantiene durante todo el tiempo que dure el trámite.[39] El momento crucial para la reactivación y comienzo del término prescriptivo ocurre cuando termina definitivamente la acción ejercitada originalmente.[40] Interrumpida la prescripción, comienza a contarse un nuevo plazo prescriptivo una vez cesa la causa interruptora.[41]

Ahora bien, la eficacia de la prescripción está sujeta al cumplimiento de los siguientes requisitos: **(a)** oportunidad o tempestividad, lo que significa que el ejercicio de la acción se realice <u>antes</u> de la consumación del plazo; **(b)** legitimación, su ejercicio corresponde al <u>titular</u> del derecho; **(c)** identidad, la acción ejercitada responde exactamente al <u>derecho</u> que está afectado por la prescripción; y **(d)** la <u>idoneidad</u> del medio utilizado.[42]

Como norma general, la presentación de una querella ante la Unidad Anti-discrimen o ante la EEOC tiene el efecto de interrumpir el término prescriptivo de un (1) año sobre las reclamaciones de discrimen y hostigamiento sexual, hasta que el organismo administrativo emita una decisión final.[43] Sin embargo, debe cumplirse con los requisitos mencionados para que sea eficaz la interrupción de la reclamación.

-C-

Actualmente en nuestra jurisdicción una persona con impedimentos físicos o mentales posee dos remedios contra actuaciones discriminatorias de su patrono: uno estatal, provisto

---

[38] *Id.*
[39] *Agosto Ortiz v. Municipio de Río Grande*, 143 DPR 174, 181 (1997).
[40] *Id.*
[41] *Díaz de Diana v. AJAS Ins. Co.*, supra, pág. 474.
[42] *De León v. Caparra Center,* 147 DPR 797, 805 (1999); *Galib Frangie v. El Vocero*, supra, pág. 567.
[43] *Suárez Ruiz v. Figueroa Colón,* supra, págs. 151-152.

por la antes dicha *Ley de Igualdad de Oportunidades en el Empleo para Personas con Impedimentos*, según enmendada (en adelante, "Ley Núm. 44"), y uno federal, estatuido por el *Americans with Disabilities Act* (en adelante, "Ley ADA").[44] La Ley Núm. 44 fue aprobada "*con el fin de proteger a las personas con impedimentos físicos o mentales para ampliar así sus oportunidades de empleo y prohibir el discrimen contra ellas en el empleo*".[45]

Para reclamar los remedios al amparo de esta ley, se ha establecido que el promovente tiene la opción de instar una acción directamente por la vía judicial o tramitar una querella ante la Unidad Anti-Discrimen del Departamento del Trabajo y Recursos Humanos, a través del mismo proceso administrativo provisto las reclamaciones al amparo de la Ley Núm. 100 de 30 de junio de 1959, que prohíbe el discrimen por razón de edad, raza, color, sexo, orientación sexual, identidad de género, origen social o nacional, condición social, afiliación política, ideas políticas o religiosas, o por ser víctima o ser percibida como víctima de violencia doméstica, agresión sexual o acecho, por ser militar, ex militar, servir o haber servido en las Fuerzas Armadas de los Estados Unidos o por ostentar la condición de veterano.[46]

Así pues, un empleado que interese hacer valer su remedio al amparo de la Ley Núm. 44 presentar su querella ante el Departamento del Trabajo y Recursos Humanos o ante la Oficina del Procurador de las Personas con Impedimento. El Departamento del

---

[44] La Ley Núm. 44 de 2 de julio de 1985, conocida como la *Ley de Igualdad de Oportunidades en el Empleo para Personas con Impedimentos*, según enmendada (Ley Núm. 44), 1 LPRA sec. 501; 42 USC 12101; *Rivera Flores v. Cía ABC*, 138 DPR 1, 5 (1995).

[45] *García v. Darex P.R., Inc.*, 148 DPR 364, 385 (1999), citando a *Ríos v. Cidra Mfg. Oper. of P.R., Inc.*, 145 DPR 746, 749 (1998).

[46] Art. 13 de la Ley 44 (1 LPRA sec. 511). Esta sección, en lo pertinente, dispone que "*[l]os remedios, facultades, autoridad y procedimientos establecidos en las secs. 146, 147, 147a, 148 y 149 del Título 29 estarán disponibles para el Secretario del Trabajo y Recursos Humanos y para cualquier persona que entienda que ha sufrido discrimen en el empleo por razón de impedimento en violación a las disposiciones de las secs. 501 et seq. de este título*"; *Rivera Flores v. Cía. ABC, supra.*

Trabajo tiene jurisdicción sobre los patronos privados y corporaciones públicas, mientras que la Oficina del Procurador la tiene sobre las demás agencias del gobierno.[47] Claro está, puede optar por instar su reclamación ante un tribunal sin que le sea requerido agotar remedios administrativos.[48] El efecto que tiene el incoar una querella por discrimen ante la Unidad Anti-Discrimen del Departamento del Trabajo y Recursos Humanos es que el término prescriptivo de la acción se interrumpirá al momento de notificarle la querella al patrono, y quedará en suspenso durante el trámite de la querella hasta que se notifique la determinación del Secretario del Departamento de Trabajo y Recursos Humanos. El término también se reanudará si el querellante, durante el trámite de la querella, solicita retirarla y el Secretario lo apruebe mediante determinación al efecto. Ello ocurre tanto con reclamaciones de discrimen al amparo de la Ley Núm. 100, *supra*, como al amparo de la Ley Núm. 44.[49]

De otro lado, la Ley ADA fue aprobada el 26 de julio de 1990 con el fin de establecer la obligación de todo patrono de proveer acomodo razonable en el lugar de trabajo a las personas con impedimentos. Poco después de la aprobación de la Ley ADA, la Ley Núm. 44 fue enmendada para atemperar nuestra legislación con la Ley ADA.[50] Distinto al procedimiento bajo la Ley Núm. 44, cuando una persona reclama un remedio bajo la Ley ADA tiene que agotar los remedios administrativos provistos antes de instar una acción judicial.[51] El remedio administrativo disponible en estos casos es una querella ante el *Equal Employment Opportunity Commission*

---

[47] *Rivera Flores v. Cía. ABC, supra.*
[48] *Id.*
[49] Art. 5 de la Ley Núm. 100 (29 LPRA sec. 150); Art. 13 de la Ley 44, *supra*; *Matos Molero v. Roche Products, Inc.*, 132 DPR 470, 476-477, 486-487 (1993).
[50] Exposición de Motivos de la Ley Núm. 105 de 20 de diciembre de 1991; *García v. Darex P.R., Inc., supra.*
[51] 42 USC. sec. 12117(a); *Rivera Flores v. Cía. ABC, supra*, pág. 6.

(EEOC).[52] Sin embargo, una vez se comienza a ventilar una reclamación ante la EEOC, el reclamante tiene la opción del trámite administrativo y solicitar autorización para instar demanda judicial. **Una vez obtiene la autorización, la parte promovente cuenta con un plazo de <u>90 días</u>, a partir del recibo de dicha autorización, para presentar su acción ante el tribunal federal**.[53] De igual forma, si la EEOC no encuentra causa para proceder con el cargo, debe desestimarlo y notificarle al querellante, quien en 90 días debe presentar una acción judicial.[54]

Debido a que en la legislación federal existe una política pública de brindarle oportunidad al foro local de considerar, en primera instancia, las querellas por discrimen, la EEOC tiene la práctica de contratar con la agencia estatal —en este caso el Departamento del Trabajo y Recursos Humanos— para la investigación de estos casos.

De esa forma, "*los organismos estatales y federales se dividen la responsabilidad de investigar y procesar las querellas instadas bajo la legislación antidiscrimen correspondiente*".[55] Mediante estos acuerdos, conocidos como *Worksharing Agreements*, los casos presentados ante la EEOC al amparo de la Ley ADA son referidos al Departamento del Trabajo, que contará con un plazo de 60 para procesarla bajo la disposición estatal.[56] Al tenor de esto, se ha resuelto que una reclamación de discrimen instada ante la EEOC equivale a presentar el cargo ante la Unidad Anti-discrimen del Departamento del Trabajo y Recursos Humanos. **El resultado de presentar una querella en cualquiera de las dos agencias es la**

---

[52] 42 USC. sec. 12117; *Rivera Flores v. Cía. ABC, supra*, págs. 6-7.
[53] 42 USC. secs. 2000e-5(b) y (f)(1); *Love v. Pullman Co.*, 404 US 522 (1972); *Matos Molero v. Roche Products, Inc., supra*, págs. 477-478.
[54] *Id.*
[55] *Rivera v. Cía. ABC, supra*, pág. 7.
[56] *Id.*

**interrupción del término prescriptivo para acudir a los tribunales**.[57]

Como bien puede apreciarse, la política pública, tanto a nivel federal como a nivel local "*es la de proveer los mecanismos administrativos necesarios para hacer viable la conciliación y resolución extrajudicial de los problemas laborales*".[58]

**-D-**

La Ley Núm. 115 de 1991, según enmendada, mejor conocida como "*Ley de Represalias*" (en adelante, "Ley 115"),[59] prohíbe a todo patrono "*despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico*".[60] Ello, siempre que dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.[61]

Para que se configure una causa de acción al amparo de la Ley Núm. 115, "*[e]l empleado deberá probar la violación mediante evidencia directa o circunstancial*".[62] Para ello, deberá establecer *prima facie* que participó en una actividad protegida por la Ley Núm. 115 y que fue subsiguientemente despedido, amenazado o discriminado.[63] Si se probara lo anterior, "el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido".[64] De así hacerlo, corresponderá al empleado "*demostrar*

---

[57] *Matos Molero v. Roche Products, Inc.*, *supra*, pág. 486. Énfasis nuestro.
[58] *Id.*, pág. 488.
[59] 29 LPRA sec. 194 *et seq.*
[60] 29 LPRA sec. 194a
[61] *Id.*
[62]*Id.*
[63] *Marín v. Fastening Systems, Inc.,* 142 DPR 499, 511 (1997).
[64] *Id.*

*que la razón alegada por el patrono era un mero pretexto para el despido*".[65]

En virtud de lo antes indicado, para tener una causa de acción bajo la Ley Núm. 115, un empleado debe probar un nexo causal entre la conducta del demandado y el daño sufrido, ya sea con evidencia directa o circunstancial, o de manera indirecta.[66] De optar por el mecanismo indirecto, corresponderá al empleado establecer *prima facie* un caso de represalia.[67] Esto último lo logrará si prueba que: (1) incurrió en una actividad o conducta protegida por ley; (2) sufrió una acción disciplinaria o adversa por parte del patrono; (3) existe *nexo causal* entre la conducta protegida y la acción disciplinaria o adversa del patrono.[68]

En relación con la exigencia de que exista un nexo causal entre la actividad protegida realizada por el empleado y la acción adversa efectuada por el patrono, nuestro ordenamiento adoptó la postura de la mayoría de los circuitos de la corte de apelación federal, en cuanto a la necesidad de demostrar la existencia de suficiente proximidad temporal entre ambos eventos.[69]

Se ha determinado que los criterios a ser evaluados como elementos de proximidad temporal son los siguientes: **(1)** si el empleado fue tratado de forma distinta que otros empleados; **(2)** si existió un patrón de conducta antagonista en contra del empleado; **(3)** si las razones articuladas por el patrono para fundamentar su acción adversa están plagadas de inconsistencias, o **(4)** cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal.[70]

---

[65] *Id.*
[66] *Rivera Menéndez v. Action Services*, 185 DPR 431 (2012); *Feliciano Martes v. Sheraton*, 182 DPR 368, 395-396 (2011).
[67] *Feliciano Martes v. Sheraton, supra*, pág. 393.
[68] *Id*, págs. 393-394; C. Zeno Santiago, *Re-enfoque empresarial de las represalias en el empleo*, 40 Rev. Jur. UIPR 245, 262 (2006).
[69] *Feliciano Martes v. Sheraton, supra*, págs. 397 - 398.
[70] *Id*; *Rivera Menéndez v. Action Services, supra.*

La suficiencia de la proximidad temporal como prueba exclusiva de causalidad, dependerá de cuán cerca en el tiempo están la actividad protegida ejercida por el empleado y la acción adversa llevada a cabo por el patrono.[71]

Si la acción adversa del patrono es realizada inmediatamente después del empleado informarle que ha incursionado en una actividad protegida, se entiende que el elemento de proximidad temporal es suficiente para establecer el requisito de existencia de nexo causal.

Sin embargo, cuando el período de tiempo entre el ejercicio de la actividad protegida y la acción adversa del patrono aumenta, el criterio de la proximidad temporal será menos útil para comprobar que existe un nexo causal entre ambos eventos.[72]

Compete aclarar que no toda acción de represalia se configura dentro de lo que pudiera catalogarse como poco tiempo, por lo que la proximidad temporal como inferencia de causalidad, resultará insuficiente.

De ser el caso, el empleado deberá demostrar "*elementos adicionales que comprueben la existencia de un nexo causal entre la actividad protegida y la acción disciplinaria adversa*".[73]

En aquellos escenarios en que no se configure una proximidad temporal, el nexo causal se probará si el trabajador logra probar otros hechos.

En virtud de ello, deberá establecer lo siguiente: **(1)** que fue tratado de forma distinta a otros empleados; **(2)** que existió un patrón de conducta antagonista en su contra; **(3)** que las razones articuladas por el patrono para fundamentar su acción adversa

---

[71] *Feliciano Martes v. Sheraton, supra,* pág. 399.
[72] *Id.*
[73] *Id.*

están plagadas de inconsistencias, o **(4)** cualquier otra evidencia que obre en el expediente para establecer el elemento del nexo causal.[74]

Lo antes indicado sólo aplica al empleado y su necesidad de establecer un caso *prima facie* por represalias.

Sin embargo, si el patrono logra fundamentar una razón no represiva para su decisión, "*se requerirá del empleado que, por preponderancia de la prueba, se valga de factores adicionales a la proximidad temporal para comprobar que las razones articuladas por el patrono no son más que meros pretextos destinados a ocultar el verdadero ánimo represivo*".[75]

Surge de lo antes señalado que la protección ofrecida por la Ley Núm. 115, *supra,* no es absoluta.

Además, no se puede perder de perspectiva que en nuestro ordenamiento todo patrono puede levantar la defensa de justa causa cuando se le acusa de haber realizado un despido injustificado.[76]

Por último, la Ley Núm. 115 dispone lo siguiente en cuanto al término que tendrán las personas que aleguen una violación para acudir ante los foros judiciales:

> *Cualquier persona que alegue una violación a esta Ley **podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación** y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar, será el doble de la cuantía que se determine causó la violación a las disposiciones de esta Ley.*[77]

A la luz de la normativa antes expuesta, procedemos a evaluar los errores señalados en el recurso ante nuestra consideración.

---

[74] *Id.*
[75] *Id.*
[76] *García v. Darex P.R., Inc.*, 148 DPR 364, 380 (1999).
[77] 29 LPRA sec. 194a. Énfasis nuestro.

**-III-**

En síntesis, la parte apelante nos señala que el foro recurrido erró al no adjudicar la totalidad de la moción de desestimación referente a la Ley Núm. 44 y la Ley ADA; y también ignoró que la causa de acción bajo la Ley Núm. 115 estaba prescrita. Veamos.

En cuanto a la Resolución recurrida, observamos que fue la intención del foro disponer del asunto sin mayores dilaciones. No obstante, de tan solo una lectura, es evidente que declaró "*No Ha Lugar la solicitud de desestimación de la causa de acción bajo la Ley Núm. 115 de 20 de diciembre de 1991*".[78] Es decir, no cabe duda de que el TPI dispuso expresamente de la causa de acción bajo la Ley Núm. 115, sin embargo, mantuvo *sub-silentio* las reclamaciones de la Ley Núm. 44 y la Ley ADA.

La *Moción de Desestimación* presentada por parte apelante levanta unas casusas de acción meridianamente claras en cuanto a la Ley ADA, Ley Núm. 44 y Ley Núm. 115. En ese sentido, Quest adujo que estaban prescritas.

Como mencionamos, la prescripción extintiva es la figura jurídica de carácter sustantivo que regula el tiempo de vida que tiene el acreedor de un derecho para hacerlo valer frente al deudor. Asimismo, esta figura **obliga al acreedor a actuar en un espacio temporal finito y le brinda certeza** al deudor de que la causa de acción en su contra no lo perseguirá infinitamente.

Quest alega que la señora Ramos Jordán se cruzó de brazos ante su posible acción y, como resultado de ello, está impedida de levantar las causas de acción bajo la Ley ADA, Ley Núm. 44 y Ley Núm. 115.

**En primer orden**, la *querella por discrimen por razón de impedimento* presentada por la apelada ante la UAD-DTRH tuvo el

---

[78] Apéndice VIII del *Alegato en Oposición a Apelación Civil,* en las págs. 40-45.

efecto de interrumpir el término prescriptivo. Como indicamos, nuestro Tribunal Supremo ha resuelto que la presentación de una querella administrativa puede considerarse como una forma de interrupción prescriptiva. Es decir, **el término prescriptivo quedará congelado por el tiempo que duren los procedimientos administrativos y comienza a transcurrir nuevamente cuando la agencia efectué una determinación final**.[79]

Nótese, que el **3 de abril de 2019** la parte apelada presentó una querella por razón de impedimento ante la UAD-DTRH, y luego de solicitar un permiso para litigar, le fue concedido y notificado el **3 de agosto de 2019**; aunque todavía quedaba disponer la autorización de la EEOC. Así, el **19 de julio de 2022** la apelada presentó la **primera** reclamación (caso núm.: BY2022CV03666) con las cuatro causas de acción (Ley ADA - Ley Núm. 44, Ley Núm. 80, Ley Núm. 115 y Artículo 1802 CC.), que luego fue desistida voluntariamente y confirmada en este foro intermedio en el caso núm. KLAN202200852. No obstante, el **1 de agosto de 2022** la EEOC emitió el *Right-to-Sue Letter*, por lo cual, el **7 de noviembre de 2022** la señora Ramos Jordán presentó la **segunda** reclamación con idénticas partes y causas que la **primera**.

**En segundo orden**, distinto a la primera reclamación, esta vez el TPI desestimó voluntariamente las causas de acción por Ley Núm. 80 y Artículo 1802 CC, mediante Sentencia Parcial. Por lo tanto, solo resta resolver si el TPI erró al no desestimar las causas de acción por Ley ADA, Ley Núm. 44 y Ley Núm.115.

En cuanto a la causa de acción bajo la Ley ADA **está prescrita**, ya que desde el <u>**1 de agosto de 2022** la EEOC autorizó a la parte apelada iniciar su demanda judicial, por lo cual, contaba con un plazo de **90 días**, a partir del recibo de dicha autorización,</u>

---

[79] *Maldonado v. Russe*, 153 DPR 342, 354 (2001); *Suárez Ruiz v. Figueroa Colón*, supra, pág. 151.

para presentar su acción judicial. Ello lo hizo el **7 de noviembre de 2022**, lo que **excedió los noventa días**.

En cuanto a la Ley Núm. 44 y Ley Núm. 115, no están prescritas. Nótese, que el **1 de agosto de 2022** la EEOC emitió el *Right-to-Sue Letter*, para que —dentro del término de un año— la apelada pudiera reclamar bajo la Ley Núm. 44 lo cual ocurrió, el **7 de noviembre de 2022**.

En cuanto a la Ley Núm. 115, se establece un término prescriptivo de tres (3) años para que cualquier persona que alegue una violación pueda instar acción en contra del patrono. Cabe destacar que la apelada fue despedida **10 de abril de 2019** y la primera reclamación (caso núm.: BY2022CV03666) fue presentada el **19 de julio de 2019**, lo que tuvo el efecto de interrumpir el término prescriptivo, ya que entre otras causas de acciones, se presentó una causa de represalia bajo la Ley Núm. 115. Esta primera reclamación fue desistida voluntariamente mediante Sentencia del **12 de octubre de 2022**, notificada el 13 del mismo mes y año y confirmada por este foro apelativo en el caso núm. KLAN2022200852. Así, el **7 de noviembre de 2022** se presentó una **segunda** reclamación con idénticas reclamaciones y partes que en la primera. A todas luces, el término prescriptivo de tres años estaba lejos de cumplirse.

Consonó con lo anterior, se expide el auto de *certiorari* y se revoca la Resolución recurrida, a los únicos fines de resolver que la causa de acción bajo la Ley ADA está prescrita; así, se confirman las causas de acción bajo la Ley Núm. 44 y Ley Núm. 115 por no estar prescritas. Se ordena la continuación de los procedimientos.

**-III-**

Por los fundamentos antes expresados, expedimos el auto de *certiorari* y **revocamos** la causa de acción bajo la Ley ADA; así, se

confirma la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones